UNITED STATES *v.* ECKSTEIN (No. 743).[1]

COTTON THREAD COATED WITH CELLULOSE.

The merchandise, it is true, retains its character as cotton yarn, but the language of paragraph 405, tariff act of 1909, is comprehensive in its application to artificial or imitation horsehair by whatever name known and by whatever process made; and "artificial or imitation horsehair" describes the importation accurately. It was dutiable as such under the paragraph named.

United States Court of Customs Appeals, March 20, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26216 (T. D. 31788).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise the subject of this importation is given by the importers the trade name of viscelline. It is manufactured by covering a single cotton thread with a coating of cellulose or viscose, material produced from wood pulp. Its manufacture is described as follows: Cotton yarn is dyed, then drawn through a viscose bath that gives it a lustrous coating, and then redyed. It is run on spools and imported in that form. The present importation differs from glazed or coated cotton yarn in that the latter is given a bath in starch and then polished by brushing. The present importation is said to be superior to the other and it has a higher luster. Cotton is the material of chief value.

---

[1] Reported in T. D. 32354 (22 Treas. Dec., 498).

Duty was assessed on this importation at the rate of 45 cents per pound as imitation horsehair, under paragraph 405 of the tariff act of 1909. It is claimed to be dutiable under paragraph 313 as cotton thread or yarn.

The material portions of the two paragraphs in question are as follows:

405. Yarns, threads, filaments of artificial or imitation silk, or of artificial or imitation horsehair, by whatever name known, and by whatever process made, if in the form of singles, forty-five cents per pound; if in the form of tram, fifty cents per pound; if in the form of organzine, sixty cents per pound * * *.

313. Cotton thread and carded yarn, warps or warp yarn, in singles, whether on beams or in bundles, skeins, or cops, or in any other form, except spool thread of cotton, crochet, darning, and embroidery cottons, hereinafter provided for, not colored, bleached, dyed, or advanced beyond the condition of singles by grouping or twisting two or more single yarns together, two and one-half cents per pound on all numbers up to and including number fifteen, one-sixth of a cent per number per pound on all numbers exceeding number fifteen and up to and including number thirty, and one-fifth of a cent per number per pound on all numbers exceeding number thirty: *Provided*, That none of the foregoing shall pay a less rate of duty than fifteen per centum ad valorem; colored, bleached, dyed, combed, or advanced beyond the condition of singles by grouping or twisting two or more single yarns together, whether on beams, or in bundles, skeins, or cops, or in any other form, except spool thread of cotton, crochet, darning, and embroidery cottons, hereinafter provided for, six cents per pound on all numbers up to and including number twenty-four, and all numbers exceeding number twenty-four and up to number eighty, one-fourth of one cent per number per pound * * *.

The board held the article to be properly dutiable as a dyed cotton yarn under paragraph 313. The Government brings the case here for review.

A mere examination of the importation is sufficient to show that the article imported is in fact an imitation of horsehair, and the evidence of the importer's witnesses discloses that it is used for the same purposes that natural horsehair is devoted to. This presents the question of which is the more specific designation of the article, cotton thread or yarn, provided for in paragraph 313, or artificial or imitation horsehair, "by whatever name known, and by whatever process made," under paragraph 405. We see little occasion for hesitancy in determining this question. It is true that this might, in the absence of other specific provision, be called a cotton thread or yarn. Although it has been subjected to an extraordinary process, yet it retains its character as cotton yarn, as was held by the Supreme Court in the recent case of Eckstein v. United States (reported in T. D. 32090). But this is far from saying that cotton yarn is a more specific designation of the importation than the comprehensive one incorporated in the tariff act of 1909, namely, yarns of artificial or imitation horsehair by whatever name known and by whatever process made. Under this provision, every ingredient that would be embodied in artificial or imitation horsehair might be subject to the

rate of duty imposed by the tariff. It would not result therefrom that no such commodity as artificial horsehair could be brought under this provision. If one or the other must yield, that which most accurately describes the importation is the one that should be applied. In our judgment, the term which describes with entire accuracy this importation is "artificial or imitation horsehair."

It is said that artificial horsehair was known before the present tariff act, and that it consisted entirely of cellulose, had no thread, and was chemically spun, and it is argued that this was the imitation horsehair which Congress must have had in mind. Imitation horsehair was not mentioned in the tariff act of 1897. Real horsehair was on the free list. It can not be said, therefore, that Congress adopted any interpretation that had been placed upon artificial horsehair in adopting the provisions of the present act. The evidence discloses that there was such an article, which was called artificial horsehair. But it is very clear that there was no intention to place any limitation in the present act which would confine it to such previously known artificial horsehair if that were the only known article. It would appear that the terms were purposely made broad to include imitation or artificial horsehair by whatever name it might be known or by whatever process it might be made. We are not hampered by any adjudication which confined the term imitation or artificial horsehair to any particular form of imitation. It is enough if we find the article in question to answer the call of these terms. We are entirely satisfied that it does so answer the call of this provision, and it results that the decision of the Board of General Appraisers must be *reversed* and the assessment of the collector sustained.