(C.D. 3944)

ARTHUR KESSLER & Co.
ARTHUR J. FRITZ & Co. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 24, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Herbert P. Larsen*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The merchandise, the subject of this protest, consists of certain blank books imported from Japan in 1964, and referred to in the Special Customs Invoice as GX 119 and GX 120 albums. It was classified under item 256.60 of the Tariff Schedules of the United States as autograph, photograph, postage-stamp, post-card and scrap albums, and was assessed with duty at 13.5 per centum ad valorem. Plaintiffs maintain that the merchandise is more specifically provided for under item 256.58 of the Tariff Schedules of the United States, which covers bound blank books, other than diaries, notebooks and address books, and duty should therefore have been assessed at 8.5 per centum ad valorem.

At the trial, a sample of the merchandise was introduced into evidence as plaintiffs' exhibit 1, and the protest was submitted on this representative sample. Government counsel offered to stipulate that plaintiffs' illustrative sample "may be used for autographs, photographs, postage-stamps, post-cards, and other descriptive items." Counsel for plaintiffs did not agree to stipulate as suggested, and rested his case "with the sample in evidence, and let the court take judicial notice of how Exhibit 1 may be used." Neither party called any witness.

The court has examined the illustrative exhibit, and from its appearance it may be described as a spirally bound book or album. It contains thirty blank cardboard leaves or pages, and is of a total thickness of more than ½ inch. The pages are rectangular with dimensions of 12¾ inches by 10¼ inches. Each page has twenty-nine holes spaced equidistant from each other, and ¼ inch from one of the long edges of the page. The pages, together with hard covers and a sheet of paper between one of the covers and the first page likewise containing holes, are kept together or "bound" by a single metal coil, or spiral which is wound through the twenty-nine holes. The covers are of a

blue burlap material on the exterior and are faced with paper on the inside. A transparent plastic cover or dust jacket is fitted over the front and rear covers and the coil.

The following are the pertinent or competing statutory provisions:

Schedule 2, Part 4, Subpart C of the Tariff Schedules of the United States:

"Blank books, bound:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 256.58 | Other | 8.5% ad val. |
| 256.60 | Autograph, photograph, postage-stamp, post-card and scrap albums, and albums for phonograph records | 13.5% ad val." |

Since it is conceded that the merchandise does not consist of "albums for phonograph records", the question presented is whether it was properly classified under item 256.60 which covers "autograph, photograph, postage-stamp, post-card and scrap albums".

Plaintiffs contend that the merchandise does not consist of "albums", but "falls squarely within the common meaning of the provision for blank books, bound, as defined by this court" in the case of *Overton & Co. v. United States*, 22 Treas. Dec. 437, T.D. 32327 (1912). They maintain that the illustrative sample of the merchandise herein meets the criterion of "book" as set forth in that case. The merchandise in the *Overton & Co.* case consisted of so-called "wedding books", "baby books", and other books for the recording of events. They had been described by the appraiser as "booklets made of paper with cardboard covers, *bound* in satin and having silk cord running through to hold the leaves together." [Italics in original.] 22 Treas. Dec. at 437. The question presented was whether they were "booklets" within paragraph 412 of the Tariff Act of 1909, or whether they were "books of all kinds \* \* \* wholly or in chief value of paper, and not specially provided for", under paragraph 416 of that act. In that case, according to the uncontradicted testimony of trade witnesses, it was not the size of the article that determined whether it was a "booklet" or "book".

A "booklet" was understood to be an article "used for greeting or souvenir purposes, sold and dealt in by art dealers and stationers, and made up of several leaves or inserts flimsily fastened within a folder of paper or other material." (*Id.* at 438.) The Board of General Appraisers pointed out that "booklets" "are not bound and that they are put together in an insecure manner, the leaves being fastened within the cover usually by a ribbon or cord, or perhaps in some other manner different from that contemplated in ordinary and usual binding." (*Ibid.*) On the other hand, it was stated that "[a] book is distinguished therefrom, according to the same trade understanding, in that it is a

collection of leaves of any size permanently stitched or bound together in a cover, the binding being of the kind of work performed by the bookbinder." (*Ibid.*) It was added that, where the question is a close one, the real test is the binding, and not the size of the article. The word "booklet", therefore, did not apply to "firmly and permanently stitched and bound small books, such as are the product of the bookbinder's art." (*Ibid.*)

In the *Overton & Co.* case the Board sustained the protest, and held that the articles therein were dutiable under paragraph 416 covering "books of all kinds", for the following reasons:

> "The articles here in question are little books; the leaves therein are permanently fastened and bound in the cover; the binding is the work of the bookbinder; and the cord mentioned in the appraiser's report as 'running through to hold the leaves together' is shown to be a mere addition serving only as an ornament." (*Ibid.*)

In determining the applicability or degree of pertinence of the *Overton & Co.* case to the case at bar, it must be borne in mind that the governing statutory provisions are not the same. In the *Overton & Co.* case the tariff act provision read "books of all kinds * * * wholly or in chief value of paper, and not specially provided for." In the case at bar the claimed provision of the tariff schedules covers "blank books, bound, other". The *Overton & Co.* decision speaks of "the ordinary and usual binding" and "a collection of leaves of any size permanently stitched or bound together in a cover, the binding being of the kind of work performed by the bookbinder." It cannot be questioned that the holding therein was limited to "firmly and permanently stitched and bound small books, such as are the product of the bookbinder's art." See also *Los Angeles Tile Jobbers, Inc.* v. *United States*, 63 Cust. Ct. 398, 405, C.D. 3925 (1969).

The *Overton & Co.* case is clearly distinguishable from the case at bar. The article, the subject of the present protest, is not stitched and the record does not reveal whether it is a "product of the bookbinder's art." The record also does not indicate whether the spiral coil constitutes "ordinary and usual binding" for a book, or whether a book with a metal coil is deemed to be "bound" in the commercial sense.

Plaintiffs also maintain that the article in question is more specifically provided for in the tariff schedule item pertaining to "blank books, bound, other", rather than the item which covers "albums", under which it has been classified. No one would question the fundamental principle of customs law that in a clasisfication case where there are two or more competing provisions, the one "that provides for the article with the greatest degree of accuracy and certainty is the more specific

provision." *United States, etc.* v. *Simon Saw & Steel Company*, 51 CCPA 33, 41, C.A.D. 834 (1964). See general headnote 10(e)(i) of the Tariff Schedules of the United States. Clearly, the tariff provision "which most accurately describes the importation is the one that should be applied." *United States* v. *Eckstein*, 3 Ct. Cust. Appls. 75, 77, T.D. 32354 (1912).

Notwithstanding the extensive discussion of this subject in the briefs, the question presented still remains whether the article is more specifically and more accurately described as a "blank book" or as an "album". Plaintiffs urge that the provision for "blank books" is more specific than the provision for "albums". It would seem obvious, however, that if the merchandise consists of "albums", that *eo nomine* designation would be more specific and would prevail. An example which favors the applicability of the *eo nomine* provision is found in the case of *Rudolph Schick* v. *United States*, 34 CCPA 95, 100, C.A.D. 348 (1946), where the court held that the *eo nomine* provision for "charts" contained in the Tariff Act of 1930, was a more specific designation for "charts" lithographically printed than the provision for "articles" lithographically printed.

Plaintiffs offered no evidence as to the use of the controverted merchandise. Counsel for plaintiffs introduced the evidence stating, "let the court take judicial notice of how Exhibit 1 may be used." On this record it is particularly pertinent to quote the following from the case of *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, 164–165, C.A.D. 544 (1953):

> "While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact which, in a case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. In other words, we are reluctant to disturb the presumption of correctness attaching to the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification."

Notwithstanding the applicability and relevance of the quotation from the *Tobert Co.* case to the case at bar the court has nevertheless examined lexicographic definitions of the word "album". In *Webster's Third New International Dictionary of the English Language Unabridged 1968*, for example, it is defined or described as follows:

> "1a: a bound or loose-leaf book usu. with mostly blank pages or some other volume or packet designed or used for making a collection (as of autographs, stamps, photographs, drawings, or specimens) usu. to a selected theme, subject, or pattern—compare SCRAPBOOK."

Scrapbook is therein defined as follows:

"1: a blank book in which miscellaneous items (as newspaper clippings or pictures) may be pasted or inserted."

Prior editions of that dictionary and other standard dictionaries contain similar definitions. The various lexicographic definitions of the word "album" and an examination of the merchandise not only do not support plaintiffs' claim, but rather indicate that the controverted merchandise has been properly classified.

On the basis of the record presented herein, there is no doubt that plaintiffs have neither overcome the presumption of correctness that attaches to the collector's classification nor proven the correctness of the claimed classification.

In view of the foregoing, the protest is overruled, and the assigned classification of the merchandise under item 256.60 of the Tariff Schedules of the United States is hereby sustained.

Judgment will issue accordingly.