58 CCPA

**NOMURA (AMERICA) CORP., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5366.**

United States Court of Customs and Patent Appeals.

Jan. 14, 1971.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellants; Earl R. Lidstrom, Chicago, Ill., James S. O'Kelly, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Steven P. Florsheim Customs Section, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, LANE, Associate Judges, and McMAN-US, Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

The importer appeals from the decision and judgment of the United States Customs Court, First Division, which overruled its protests and sustained the classification of certain merchandise invoiced as "Wader Boots—Chest High" under paragraph 1537(b) of the Tariff Act of 1930 as "[b]oots, shoes or other footwear, wholly or in chief value of india rubber." Nomura (America) Corp. v. United States, 62 Cust.Ct. 524, 299 F.Supp. 535 (1969).

By presidential proclamation (T.D. 46158), classification of imported goods as "[b]oots, shoes, or other footwear" under paragraph 1537(b), as was done in this case, requires duty to be assessed on the basis of American selling price appraisement, as defined in section 402 a(g) of the 1930 Act. Appellant claimed below, and urges here, that the instant imported merchandise, while properly classified under paragraph 1537(b), should have been dutied under the provision referring to other manufactures of india rubber or gutta percha. Under such circumstances, the goods would then be assessed duty at the same ad valorem rate but on a basis other than the American selling price appraisement.[1]

Appellant is a Japanese trading company which, at the time of the importations questioned here, was importing footwear from its parent company in Japan. In the trial below, appellant called a single witness and introduced an illustrative exhibit. The witness, Mr. Sam Garfinkel, identified that exhibit as chest high waders illustrative of the imported goods and in all material respects the same as the articles mentioned in the invoices before the court. He further testified that the articles were "[u]sed primarily for fishing", to keep the users dry up to the chest and covered the body "[r]ight from the bottom of the feet right up to the chest."

The government relies primarily on the testimony of two witnesses. The first, Mr. Robert Frazza, testified that he was a buyer of men's and women's footwear for Abercrombie & Fitch, a retailer with ten stores located throughout the United States. He had held that position for seven years and prior to that had worked in footwear lines since 1947. Mr. Frazza further testified that he had

---

1 The relevant statute, paragraph 1537(b), Tariff Act of 1930, as modified, T.D. 53865, provides in part as follows:

Manufacturers of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for (except * * *):
   Boots, shoes, or other foot-

wear, wholly or in chief value of india rubber .... 12½% ad val.
Note: The duty on the foregoing articles is to be calculated on the basis specified in T.D. 46158.
Other ................. 12½% ad val.

bought and sold articles of merchandise such as the importer's illustrative exhibit. He stated that such articles were included as part of Abercrombie & Fitch's footwear line, that they are "bought solely in the footwear, shoe department," and sold "[b]y foot size, shoe size." He went on to state that the article "protects, in this case it protects up to the chest high, or just below the chest, but it is from the foot, it is primarily a wading boot."

Mr. Frazza, on cross-examination was asked whether he agreed with the definition of "boot" found in Webster's New International Dictionary, Second Edition, 1960, as:

"[a]n article of apparel, usually of leather, for the foot and leg, sometimes reaching only just above the ankle, sometimes to the knee, or especially when made of rubber, to the hip."

He said he would agree with the definition "if it goes higher than the hip". He would not if it stopped at the hip.

Joel K. Wechsler was next called on behalf of the government. He testified he worked for Converse Rubber Company as assistant general manager of the sporting goods division, and that Converse was primarily a manufacturer of footwear items, i. e., "fishing and hunting goods, tennis shoes, basketball shoes, waders." Mr. Wechsler testified that items such as the importer's illustrative exhibit "are sold by foot size as waders, as footwear" and that at sporting goods trade shows and shoe trade shows they are usually displayed along with other waterproof footwear. On re-direct examination, he testifed that "[t]he primary purpose is to protect the foot and leg" and on cross examination that any function of the waders to keep some of the area above the waist dry would be "a secondary purpose".

On the record before us, the sole question we find determinative is whether the court below was correct in concluding that the merchandise at bar, "waders", was properly included in the provision of paragraph 1537(b) of the Tariff Act of 1930, which reads, "[b]oots, shoes or other footwear, wholly or in chief value of india rubber."

Appellant's principal argument is that a wader can not be a boot because a boot is commonly defined as "an article which covers the foot and leg, extending no further than the hip." Since the goods at bar cover almost ¾ of the body, it is contended that they are not, therefore, boots or footwear.

Following the authority set out in United States v. O. Brager-Larsen, 36 CCPA 1, C.A.D. 388 (1948), the court below made an intensive examination of all available definitions for the terms "shoes", "boots", and "footwear", as well as the term "waders".

We will not attempt to review the discussion and findings as set out in that opinion or to recite their findings here. Suffice it to say that, after careful consideration, we have concluded that the Customs Court correctly held as follows:

The merchandise here is "primarily a wading boot" * * *, or as referred to in the official papers received in evidence as an unmarked exhibit, "wader boots." Although characterized by a distinctive name, it is no less a form of "boot" or "boots" within the intendment of the tariff laws. There can be no doubt of the applicability of the rule that an *eo nomine* statutory designation of an article, without limitation or contrary legislative intent, judicial decision, or administrative practice, includes all forms of the article. Astra Trading Corp. v. United States, 56 Cust.Ct. 555, 561, C.D. 2703 (1966); Nootka Packing Co. et al. v. United States, 22 CCPA 464, 470 T.D. 47464 (1935).

In view of the foregoing, the court concludes that the imported merchandise, invoiced as "Wader Boots—Chest High", was properly classified under paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865 as "[b]oots, shoes, or other footwear,

**1322**

wholly or in chief value of india rubber."

\*     \*     \*     \*     \*     \*

As in all other cases involving a protest of the collector's classification there is a presumption that the classification is correct. F. H. Kaysing v. United States, 49 CCPA 69, 71, C.A.D. 798 (1962). The plaintiff bears the burden of establishing that the classification is erroneous and that the claimed classification is correct. Novelty Import Co. Inc. v. United States, 53 CCPA 28, 33, C.A.D. 872 (1966); United States v. Victoria Gin Co., Inc., et al., 48 CCPA 33, 35, C.A.D. 759 (1960); United States v. Gardel Industries, 33 CCPA 118, 121, C.A.D. 325 (1946).

To this well founded opinion we feel we can add little. The judgment of the Customs Court is therefore *affirmed.*

*Affirmed.*