Vilem **B. HAAN** et al.

v.

**UNITED STATES.**

**C.D. 4260; Protests 68/31495–101436, 68/54337–104761.**

United States Customs Court,
First Division.
Aug. 27, 1971.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen. (Herbert P. Larsen, and Urban S. Mulvehill, New York City, trial attys.), for defendant.

Before WATSON, MALETZ and RE, Judges.

RE, Judge.

The question presented in these two protests consolidated for purposes of trial, pertains to the proper classification, for customs duty purposes, of certain merchandise described on the invoices as "Continent, Headrest", and "headrests 'Standard' model". The merchandise was classified by the customs officials under item 727.80 of the Tariff Schedules of the United States as "[p]illows, cushions, mattresses, and similar furnishings", and, depending upon the date of entry, was assessed with duty at the rate of 20 per centum or 19 per centum ad valorem.

Plaintiffs have protested the classification. They claim that the merchandise is properly classifiable under item 727.06 of the tariff schedules which provides for "[f]urniture designed for motor-vehicle use, and parts thereof", and should therefore have been assessed with duty at the rate of 8½ or 7½ per centum ad valorem, depending upon the date of entry.

It is plaintiffs' claim that the articles in question are exclusively designed and

used as automobile seat headrests. They contend that the articles, by physical construction and use, are not the kind of articles specifically provided for in item 727.80 of the tariff schedules which pertains to "[p]illows, cushions, mattresses, and similar furnishings". Since the articles are obviously automobile seat headrests it is urged that they should properly have been classified under item 727.06 which provides for "[f]urniture designed for motor-vehicle use, and parts thereof".

That the merchandise is properly described by the plaintiffs may be gleaned from the first sentence in defendant's brief that states that the "articles involved in these two protests, * * * are automobile heardrests." The question presented, therefore, is whether the automobile seat headrests in issue have been properly classified under a tariff provision which covers "[p]illows, cushions, mattresses, and similar furnishings", or whether they should have been classified under the claimed provision which covers "[f]urniture designed for motor-vehicle use, and parts thereof"?

The pertinent provisions of the Tariff Schedules of the United States may conveniently be set forth as follows:

Schedule 7, part 4, subpart A. "Furniture, Pillows, Cushions, and Mattresses"

*Subpart A headnotes:*

"1. For the purposes of this subpart, the term '*furniture*' includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, * * * aircraft, vessels, vehicles, or other means of transport, * * * even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; * * * "

*Classified under:*

"727.80 Pillows, cushions, mattresses, and similar furnishings, all the foregoing, whether or not fitted with covers and with or without electrical heating elements, fitted with springs, stuffed, or both, or of expanded, foamed, or sponge rubber or plastics * * * 20%, [19%] ad val."

*Claimed under:*

"727.06 Furniture designed for motor-vehicle use, and parts thereof * * * 8.5%, [7.5%] ad val."

The record in this case consists of two illustrative samples of the automobile seat headrests in issue, and the testimony of one witness who testified for the plaintiffs. The witness is the president of the plaintiff corporation which distributes automobile parts and accessories, and does business in the 50 States of the United States. The witness is familiar with the automobile seat headrests, and knows the manner in which they are used because he has sold them and has seen them used. He testified that they "can only be used in automobile front seats", and that "they are affixed by sliding over the backrest of the front seats and can be, if one wants to, affixed by means of two self-tapping screws to the back part of the front seat."

He demonstrated that the headrest is adjustable, that is, by turning the knobs, located at either side, the headrest may be raised up or down and backward or forward, so that the head may rest on the headrest. He testified further that the headrest, once placed on the seat of the car, is never taken off the car and is always left in the car.

Besides his own car, the witness has seen the headrests used in the United States "in many hundreds and perhaps thousands of cars from coast to coast." As for the use of the headrests the witness replied that:

"They could not be used anywhere else, automobile or otherwise, except in the front seat. Or if there should be a car with two seats only, can be used in the front. If it's a four-seater car it's only used in the front. It's designed for that purpose."

He concluded his direct testimony by stating that headrests "are used for comfort and safety."

In cross-examination, the witness indicated that the "whole item", i.e., the merchandise, "is a headrest". In response to questions by counsel for the government, who attempted to show that the headrests could be "slipped" onto ar-

ticles other than automobile seats, the witness noted that they could be slipped "over any manner of fixture or bench or chair", but that such use "would serve no purpose". In response to the question whether government counsel could place the headrest on the back of a chair, the witness replied in the affirmative, but added that "[y]ou would have an automobile headrest on the chair."

The cross-examination of the witness, as well as the demonstration presented by counsel for defendant, leaves no doubt that the headrests were designed to be used in the front seat of automobiles. Competent cross-examination merely reaffirmed the fact that the merchandise was intended to be used as an automobile seat headrest and that it is, in fact, so used. The witness was thoroughly familiar with the article and knew precisely how to affix and adjust it on the front seat of a car. Furthermore, he has never seen these or similar headrests used anywhere other than on automobile seats. The testimony of plaintiffs' witness, and an examination of the samples introduced into evidence, lead to the inescapable conclusion that the merchandise consists exclusively of automobile seat headrests.

■ The pertinence and probative value of the testimony of plaintiffs' witness, on the important question of the use of the merchandise at bar, can not be ignored or minimized. The following comments of this court in the case of Novelty Import Co., Inc. v. United States, 60 Cust.Ct. 574, 582, C.D. 3462, 285 F.Supp. 160, 165 (1968), are precisely applicable to the case at bar:

"On the question of chief use, we note that it has long been held that importers and merchants have every incentive for knowing the uses to which their goods are or may be put and that it may be assumed, *prima facie*, that the only uses known to them are the only uses of such wares. Klipstein v. United States, 1 Ct.Cust. Appls. 122, 124, T.D. 31120 [1910]; Kubie & Co. v. United States, 12 Ct. Cust.Appls. 468, 470, T.D. 40668 [1925]; United States v. [The] Baltimore & Ohio R.R. Co., etc., 47 CCPA 1, 5–6, C.A.D. 719 [1959]. In a number of recent cases, this court has had occasion to point out that executives concerned with designing, framing specifications, ordering, importing, selling, distributing, and promoting an article have to know its chief uses and are competent to testify about them. F. B. Vandegrift & Co., Inc. v. United States, 56 Cust.Ct. 103, C.D. 2617 [1966]; Royal Cathay Trading Co. et al. v. United States, 56 Cust.Ct. 371, 383, C.D. 2662 [1966]; Fred Bronner Corp., v. United States, 57 Cust.Ct. 428, 438–439, C.D. 2832 [1966]; Inter Maritime Fwdg. Co., Inc. v. United States, 59 Cust.Ct. 412, C.D. 3177 [1967] (Appeal 5304 dismissed May 6, 1968)."

■ On the question of the use of the merchandise, it is worthy of note that the courts have uniformly held that the uncontradicted testimony of a single, competent and credible witness may be sufficient to discharge plaintiffs' burden of proof. Davis Products, Inc., et al. v. United States, 59 Cust.Ct. 226, 229–230, C.D. 3127 (1967). In the words of the oft-cited case of Klipstein v. United States, 1 Ct.Cust.Appls. 122, 124–125, T.D. 31120 (1910):

"If the testimony of the importers' witness had been contradicted or impeached in any way, the evidence of additional witnesses would have been very valuable, not to say necessary, but in the absence of such impeachment or contradiction the sworn declaration of one was as effective as that of a number."

In the case at bar plaintiffs' witness meets fully all of the requirements set forth in the quotations from the *Novelty Import Co.* and *Klipstein* cases. Moreover, as a result of his cross-examination, the testimony became clear beyond question that the articles were "headrests", and that they were designed to be, and, were in fact, used as automo-

bile seat headrests. No trier of the facts could doubt that the "slipping" or placing of the headrests on anything other than a front automobile seat was not an intended or actual use of the headrest.

Defendant, in its brief at page 4, states:

"The contention to which much of plaintiffs' brief is directed—that automobile seats should be considered 'furniture designed for motor-vehicle use * * *,' under item 727.06—is too basic and self-evident to dispute. It is entirely another matter, however, to conclude that the instant merchandise constitutes 'parts' of such seats."

There can, of course, be no question that automobile seats are furniture designed for motor vehicles. The legislative history of Public Law 89–241 (79 Stat. 933), which added item 727.06 to the tariff schedules, contains the specific statement that the new provision, among other things, was meant to cover "seats and parts of seats designed for motor vehicles." H.Rep. No. 1728, 88th Cong., 2d Sess. 25 (1964). Admittedly, therefore, the question presented is whether the automobile seat headrests at bar are "parts of seats designed for motor vehicles."

The defendant asserts that the oft-repeated principle of customs law, that the sample is a potent witness, is especially applicable to the present case and adds:

"An examination of the headrests shows that they casually slip on over the back of the seat. They are not so constructed as to ever become physically integrated in the seat which is already present, nor do they contain any hardware intended to be permanently and firmly coupled with hardware already present on the auto seat. They apparently just slip over the back of the seat and can then be positioned so the head can be cushioned or rested. This would be as similar to positioning a throw cushion on a household couch, as the similarities between household and automobile furniture [sic] allows." (Defendant's brief, pages 4–5)

Defendant's statement, to the effect that the headrests "casually" slip onto the back of the seat, has reference to the facility with which the headrests may be attached to the front automobile seat. It is clear, however, that no one who will examine the samples can conclude that their attachment or "slipping" onto an automobile seat is analogous to "positioning a throw cushion on a household couch". This analogy suggested by the defendant illustrates the difference of view, both factually and legally, that exists between the parties.

By comparing the merchandise to a "throw cushion on a household couch", defendant, of course, maintains that it has been correctly classified under a tariff provision that covers "pillows, cushions, mattresses, and similar furnishings". Since the seats are admittedly "furniture" within the pertinent tariff provision, the plaintiffs indicate that "the headrests are but extensions of the seats themselves, enabling the seat to perform much as it would were it to have a higher back." Plaintiffs also point out that:

"The headrest supports and protects the neck and head, just as the seat back supports and protects the back and shoulders. Once placed on the seat back the headrests [sic] is self-supporting. While its function is largely the same as the seat itself, it does not duplicate the function of the seat back. Rather it complements and extends the function of the seat back to the neck and head of the passenger, providing increased comfort and safety." (Plaintiffs' brief, pages 5–6)

Plaintiffs' view of the physical construction, purpose and function of the headrests is fully justified by the record and compels the conclusion that the headrests are "parts" of automobile seats. Moreover, plaintiffs are correct in their assertion that the proof that establishes that the headrests are parts of "[f]urniture designed for motor-vehicle use" also establishes that they are not

"[p]illows, cushions, mattresses, and similar furnishings".

The evidence of record establishes conclusively that the headrests at bar were not designed to be "[p]illows, cushions, mattresses, and similar furnishings", and are not used as such. Any analogy to a pillow or cushion is strained, and does violence to the very nature of the article both from the standpoint of the purpose that it was intended to serve and its actual use. That it was intended to be an automobile seat headrest, and a "part" of the seat in the factual sense, can not be denied. Nor, from the testimony, can it be denied that it is used exclusively as an automobile seat headrest. That the use of an article may be of paramount importance in determining its identity for customs classification purposes is a basic principle that need not be discussed here. See United States v. Quon Quon Company, 46 CCPA 70, C.A.D. 699 (1959); Kobata et al. v. United States, 66 Cust.Ct., C.D. 4213, 326 F.Supp. 1397 (1971).

The defendant asserts that plaintiffs have failed to prove that the headrests are properly classifiable as parts of automobile seats, and, in support of the classification of the customs officials, cites General Interpretative Rule 10(ij) of the General Headnotes and Rules of Interpretation of the Tariff Schedules of the United States. Rule 10(ij) states that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

The scope and meaning of the cited interpretative rule has been implemented and elucidated in many decided cases. See United States v. General Electric Co., 58 CCPA, C.A.D. 1021 (1971); Mattel, Inc. v. United States, 65 Cust.Ct. 616, 624, C.D. 4147 (1970); Pacific Hardwood Sales Co. et al. v. United States, 64 Cust.Ct. 68, 76, C.D. 3960 (1970); Robert Bosch Corp. et al. v. United States, 63 Cust.Ct. 158, 164, C.D. 3890 (1969); Foster Wheeler Corp. v. United States, 61 Cust.Ct. 166, 178, C.D.

3556, 290 F.Supp. 375 (1968); Mattel, Inc. v. United States, 61 Cust.Ct. 75, 77–78, C.D. 3531, 287 F.Supp. 999 (1968). Clearly, however, its applicability assumes the existence of a "specific provision" which covers the "part" of the particular article. Hence, there would be no question were Congress to have made provision for "automobile seat headrests". The fallacy of defendant's position lies in its assumption that the headrests are "pillows or cushions". That the defendant predicates its argument on the assumption that the headrest is a "cushion" is manifest from its assertion that:

" * * * by operation of General Interpretative Rule 10(ij), regardless of how persuasive an argument could have been, or has been, made that the instant headrest is a part of an automobile seat, that the merchandise, because the presumptively correct finding that it is a cushion or similar item still stands, *must be classified* as *specifically provided for* under item 727.80, and not as 'parts' under item 727.06." [Emphasis in original.] (Defendant's brief, page 11)

It would be anomalous indeed if the headrest at bar were to be classified under a provision which covers "cushions" simply because of the "presumptively correct finding that it is a cushion" when the issue presented is whether or not it is a cushion. Were the headrest conceded to be a "cushion" there would be no question that the specific provision would prevail over a provision covering "parts". An example is found in the case of Mattel, Inc. v. United States, 61 Cust.Ct. 75, C.D. 3531, 287 F.Supp. 999 (1968), which dealt with "wigs" which were "parts" of dolls. Since the merchandise in the *Mattel* case was concededly described in a provision which covered "wigs", by virtue of General Interpretative Rule 10(ij) the *eo nomine* provision for "wigs" prevailed over the provision covering "parts of dolls". See also Mattel, Inc. v. United States, 65 Cust.Ct. 616, C.D. 4147 (1970).

An examination of the headrests, and all of the uncontradicted testimony, will reveal that the plaintiffs have borne their burden of proof and have established that the headrests are not pillows, cushions or mattresses. Nor, under the doctrine of *ejusdem generis*, can it be said that they are "similar furnishings". See cases cited in Nomura (America) Corp. v. United States, 62 Cust.Ct. 524, 530–31, C.D. 3820, 299 F.Supp. 535 (1969), affirmed, 58 CCPA, C.A.D. 1007, 435 F.2d 1319 (1971).

It is also necessary to determine whether plaintiffs have succeeded in proving that the automobile seat headrests are "parts", in the legal sense, and should, therefore, have been classified under item 727.06 of the tariff schedules which covers "[f]urniture designed for motor-vehicle use, and parts thereof".

"Parts" is a word of art in customs law, and has been the subject of voluminous judicial examination. A convenient point of beginning, for a summary restatement of the law pertaining to "parts", may be the case of Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964). The question presented in the Gallagher & Ascher Company case was whether certain auxiliary heaters for use in Volkswagen automobiles were properly dutiable as parts of automobiles under the Tariff Act of 1930. The Customs Court sustained the classification of the heaters as "articles having as an essential feature an electrical element or device, such as * * * heaters * * * wholly or in chief value of metal, and not specially provided for". There was no factual dispute that the heaters had "as an essential feature an electric element or device", and that they were in chief value of metal. On appeal the court noted that it was "axiomatic that the finding of the collector upon which the classification was predicated carries with it a presumption of correctness." The appellate court agreed with the views expressed by the Customs Court that whether an article is a part of another article "depends upon the nature of the so-called part and * * * to some degree on the function and purpose of the so-called part in its relation to the article to which it attaches or with which it is designed to serve." 52 CCPA at 13–14. Judge Almond, writing for the Court of Customs and Patent Appeals, nevertheless reversed and held that the auxiliary heaters were parts of the automobile.

The *Gallagher & Ascher Company* decision is particularly relevant because it indicates clearly that the so-called "rule of essentiality" expounded in an earlier case, United States v. Willoughby Camera Stores, Inc., 21 CCPA 322, T.D. 46851 (1933), no longer represents the prevailing opinion of the courts. Under the rule applied in the *Willoughby Camera Stores* case, in order for merchandise to be deemed a "part" it had to be "an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*." [Emphasis in original.] In the *Willoughby Camera Stores* case the question was whether certain tripods were "parts" of cameras. The tripods and cameras were designed and constructed to be used together. Since the tripods, however, were not "integral, constituent, or component" parts without which the cameras "could not function" as cameras, the court held that the tripods were not "parts" of the cameras.

Almost 30 years after the decision of the *Willoughby Camera Stores* case, and before the decision of the *Gallagher & Ascher Company* case, the Court of Customs and Patent Appeals in the case of Trans Atlantic Company v. United States, 48 CCPA 30, C.A.D. 758 (1960), reexamined the *Willoughby Camera Stores* case. In the *Trans Atlantic Company* case the court noted that the tripods in the *Willoughby Camera Stores* case were not only used for several purposes, other than with the cameras, but also that the tripods and cameras were rarely sold together. The court consequently concluded that the "rule of essentiality" enunciated in the *Willoughby Camera Stores* case was merely dictum,

and was to be limited to the particular facts of that case.

The *Trans Atlantic Company* case dealt with metal brackets for mounting door closers, and the issue was whether the brackets were "parts" of machines. Since it was stipulated that the door closers were "machines", the sole issue was whether the brackets should have been classified as "parts" of the machines. The court stated that the "principles" announced in the *Willoughby Camera Stores* case were not dispositive where "the record shows that the brackets have but one commercial use, i.e., the mounting of a particular door closer on the door frame." 48 CCPA at 32. After examining a quantity of the more recent pertinent cases the court concluded:

> "In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part." 48 CCPA at 33.

The court also relied on two cases in particular. One is United States v. Carl Zeiss, Inc., 24 CCPA 145, T.D. 48624 (1936), that held that separate view finders were parts of cameras. The other is United States v. Bosch Magneto Co. 13 Ct.Cust.Appls. 569, T.D. 41434 (1926), where the court held that lamps and horns were parts of automobiles.

In the *Trans Atlantic Company* case the court consequently concluded that the brackets were "clearly" parts of the door closers. *Ibid.*

It is important to note that, in the *Gallagher & Ascher Company* case, whereas the Customs Court relied on the *Willoughby Camera Stores* case, the Court of Customs and Patent Appeals, in reversing the Customs Court, relied upon the *Trans Atlantic Company* case. In the *Gallagher & Ascher Company* case the appellate court also relied upon United States v. Pompeo, 43 CCPA 9, C.A.D. 602 (1955), wherein the Customs Court sustained the claim of importers of superchargers for Ford and Austin automobiles and held that the superchargers were parts of automobiles. In affirming the decision of the Customs Court, the appellate court noted that the lower court had "properly [taken] judicial notice of the fact that numerous innovations have come into use in the automotive field in recent years * * *." 43 CCPA at 12. The appellate court also agreed with the view of the lower court that the innovations or improvements have created or brought about new "parts" for the automobile "even though not all cars are equipped with such innovations." *Ibid.*

The *Pompeo* case, which held that the superchargers were parts of the automobile, obviously supported the decision of the *Gallagher & Ascher Company* case, that the auxiliary heaters were parts of automobiles.

Judge Almond, in the *Gallagher & Ascher Company* case, therefore, concluded as follows:

> "Here, as in *Pompeo*, the imported articles are dedicated to a sole specific use and 'for no other use.' Here, as in *Trans Atlantic Company*, the imported article serves a useful function. In *Trans Atlantic* the brackets mounted on the door frame were necessary to the efficient operation of the door closer. Here the record supports the view that the auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to the comfort of its occupants and in aid of the indispensable safety factor of vision by assisting in the removal of ice

from the windshield." 52 CCPA at 16.

The *Gallagher & Ascher Company* case is particularly pertinent because it also dealt with the fact that the auxiliary heater was "optional equipment". Admittedly, the Volkswagen automobile came equipped with a conventional heater and could be operated without the additional heater. The court stated specifically that those factors were "not of such vital import as to be determinative of the issue", and concluded:

"When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile * * *." *Ibid.*

The aspect of the case which pertains to the relevance of labeling merchandise as "optional" or "accessory" has been clarified by Judge Maletz in Mattel, Inc. v. United States, 61 Cust.Ct. 75, C.D. 3531, 287 F.Supp. 999 (1968). In the *Mattel* case, which dealt with wigs for dolls, the defendant sought to establish that the wigs were not "parts" because wigs for dolls are referred to as "accessories". In conformity with decided cases, Judge Maletz pointed out that:

" * * * it is the nature, function and purpose of the item in relation to the article to which it is attached or designed to serve which determines whether the item is a 'part' of the article for tariff purposes. What that 'part' may be called or labeled for other purposes, in other contexts, establishes nothing in respect of customs classification. There can be no doubt, for example, that if the superchargers in *Antonio Pompeo*, the heaters in *Gallagher & Ascher,* and the mufflers in *Border Brokerage* [58 Cust.Ct. 240, C.D. 2948 (1967)] had been called 'accessories' when sold to the consumer instead of 'optional equipment,' they still would have been held to be 'parts'

for tariff purposes." 61 Cust.Ct. at 86, 287 F.Supp. at 1007.

The observations of Judge Maletz, on the irrelevance of the label that may be placed on a product for other purposes, apply here as well. The *Border Brokerage* case, referred to by Judge Maletz, dealt with mufflers which were held to be parts of motorboats even though there was no question that they were "optional equipment". As indicated previously, in the *Mattel* case, although the wigs were held to be "parts" of dolls, by virtue of the requirement of General Interpretative Rule 10(ij) they were, nonetheless, dutiable under the provision which specifically covered "wigs".

In their briefs, both parties have discussed the case of United States v. Shelford, Inc., et al., 53 CCPA 53, C.A.D. 876 (1966), the defendant declaring that the rationale and holding of that case "should be determinative of the issue herein." (Defendant's brief, page 9). In the *Shelford* case the question was whether peel automobile backrests were furniture or parts of furniture in chief value of wood. They had been assessed with duty as articles in part of rattan, and the defendant therein, in support of the classification, asserted that the articles were not "furniture", or parts of furniture, within the common meaning of the term. The backrest was "chiefly used in automobiles as an accessory backrest to keep the driver cool in hot weather." Shelford, Inc., et al. v. United States, 54 Cust.Ct. 130, 134, C.D. 2520 (1965), reversed, 53 CCPA 53, C. A.D. 876 (1966). After a discussion of cases which distinguished between furniture and furnishings, the Customs Court concluded that although the backrests were used primarily in automobiles, "they are used for a purpose for which articles commonly known as furniture are used, namely, to support the back of a seated person." Hence, the trial court held that the articles came within "the meaning of the term furniture as used in the tariff act", and sustained the protest. The Court of Cus-

toms and Patent Appeals disagreed and reversed, holding that the backrests were not furniture. In its opinion the court said that the peel backrests "must be used much as a pillow or cushion is used." 53 CCPA at 56. As a consequence, the court decided that "[a]s such, we think that in ordinary terminology the backrests are more properly denominated furnishings rather than furniture." *Ibid.*

The defendant, in the case at bar, can derive no comfort from the holding of the *Shelford* case because the automobile seat headrest is neither a pillow or cushion, nor is it used "much as a pillow or cushion is used." 53 CCPA at 56. Indeed the plaintiffs agree that the backrests in the *Shelford* case were analogous to pillows and cushions and, therefore, were "more properly denominated furnishings rather than furniture." *Ibid.* Plaintiffs, however, point out the obvious difference that a "cushion or pillow would not extend the comfort and safety of an automobile seat to greater areas of the passenger's body" as does the automobile seat headrest. (Plaintiffs' brief, page 7) Clearly, the *headrests* at bar, as distinguished from the *backrests* in the *Shelford* case, are designed to extend the seat and are intended to support and protect the neck and head. Unlike a pillow or cushion, the headrest extends the function of the seat to the neck and head. Since the backrests in the *Shelford* case differ materially in purpose and use from the headrests at bar, defendant can place no reliance on the holding of that case.

The defendant would have the court disregard plaintiffs' reference to the National Traffic and Motor Vehicle Safety Act of 1966, Public Law 89–563 (15 U.S.C.A. §§ 1381–1425 (Supp.1969)) and the regulations issued thereunder which include requirements for head restraints on front seats. (Federal Motor Vehicle Safety Standard Nos. 201 and 202 in 32 F.R. 2413 and 33 F.R. 2945, 5793) Defendant asserts that the act

and regulations cited set forth "extremely rigid requirements for automobile headrests and the record herein does not indicate that these headrests meet the requirements." (Defendant's brief, pages 5–6) Whether the controverted headrests meet the safety standards of the cited provisions is not the question presented, nor does the court purport to comment on the safety value of the merchandise. It may be said, however, that they are not as "flimsy" in construction as defendant asserts. Moreover, the sole witness who testified at the trial declared unequivocally that "[t]hey are used for comfort and safety."

Customs classification cases are seldom free from all doubt. In the case at bar, however, it is clear that plaintiffs have successfully borne their dual burden of proof. They have established that the automobile seat headrests were erroneously classified, and that they are properly classifiable as parts of furniture designed for motor-vehicle use. Many cases have been examined that have dealt with the subject of parts. They need not be cited here. In all of them, the crucial inquiry pertained to the use and function of the controverted article and its relation and contribution to the parent article.

The record at bar indicates that the headrests fully comply with the criteria established by the pertinent judicial authorities for classification as "parts" of a parent article. The headrests are "dedicated to a sole specific use". See Gallagher & Ascher Company v. United States, 52 CCPA at 16 and United States v. Pompeo, 43 CCPA at 14. Likewise, the headrests are designed and do serve a useful function. See Trans Atlantic Company v. United States, 48 CCPA at 31. It can not be disputed that they enhance the usefulness of the parent article. By enhancing the usefulness and safety of the seat, there is a contribution to the safety and efficient operation of the vehicle. The *Gallagher & Ascher Company* case likewise dispos-

es of whatever objection can be raised on the question of the "optional" nature of the headrests, and much of the language in the court's opinion in that case is applicable here. Once attached to the seat, in the performance of the function for which it is solely dedicated, the headrest becomes "a part" of the seat. 52 CCPA at 16.

The judicial authorities also answer any question that may be raised on the manner of the physical attachment of the headrests. In Wico Corporation v. United States, 60 Cust.Ct. 324, 327, C.D. 3376, 282 F.Supp. 798 (1968), Judge Maletz cited several cases for the proposition that "it is not necessary that an item be physically attached to the machine itself in order to constitute a part." Objections as to the classification of articles as "parts" because of "ease of installation" and "ease of removal" have also been previously considered. Chief Judge Rao, in the case of Commonwealth Trading Co. v. United States, 60 Cust.Ct. 554, 558, C.D. 3458 (1968), stated that such objections were "untenable in view of prior decisions which have held that easily attached and removed articles like automobile horns and lamps were subject to classification for tariff purposes as parts of automobiles."

Since the court finds that the headrests enhance the usefulness of the seat, and contribute to the efficiency, operation or safety of the automobile, the headrests meet the judicial test established for customs classification as "a part" of a parent article.

■ The controverted merchandise was erroneously classified and should have been classified under item 727.06 of the tariff schedules which provides for "[f]urniture designed for motor-vehicle use, and parts thereof".

In view of the foregoing, the protests are sustained. Judgment will issue accordingly.