(C.D. 4342)

BROOKS BROS., A DIV. OF JULIUS GARFINCKEL & Co., INC. *v.* UNITED STATES

---

[17] n. 16.
[18] Explanatory Notes to the Brussels Nomenclature, Vol. III, Heading 84.23, p. 823.

United States Customs Court, First Division

(Decided March 13, 1972)

*John D. Rode* for the plaintiff.

*L. Patrick Gray III*, Assistant Attorney General (*Herbert Peter Larsen* and *James Caffentzis*, trial attorneys), for the defendant.

Before WATSON, MALETZ and RE, Judges

RE, Judge: The legal question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise imported from England and described on the invoice as "The Economist Diary—1966." The merchandise was classified by the customs officials under item 256.56 of the Tariff Schedules of the United States as "Blank books, bound: Diaries * * *", and was consequently assessed with duty at the rate of 20 per centum ad valorem. Since the item of the tariff schedules, pursuant to which the merchandise was assessed, in addition to diaries also covers "notebooks, and address books", it was stipulated that the merchandise was classified as "diaries" rather than notebooks or address books.

Plaintiff has protested the classification and maintains that "the merchandise should have been classified under Item 256.58, at the rate of 8.5% ad valorem, or under Item 270.45 at the rate of 3% ad valorem, or under Item 270.50 at the rate of 7% ad valorem, or under Item 273.40 at the rate of 8.5% ad valorem, or under Item 274.85 at the rate of 4% ad valorem."

Together with the applicable headnotes, the following are the pertinent provisions of the Tariff Schedules of the United States:

Classified under:

| | | |
|---|---|---|
| 256.56 | "Blank books, bound: Diaries, notebooks, and address books _____ | 20% ad val." |

Claimed under:

| | | |
|---|---|---|
| 256.58 | "Blank books, bound: <br> *   *   *   *   *   *   * <br> Other _____ | 8.5% ad val." |

Schedule 2, Part 4

"Part 4 headnotes:

1. This part covers certain paper-making materials, paper and paperboard, and articles of pulp, of paper, and of paperboard, but does not cover—

*   *   *   *   *   *   *

(ii) certain printed matter (see part 5 of this schedule) ;

*   *   *   *   *   *   *"

Schedule 2, Part 5

"Part 5 headnotes:

1. Except for decalcomanias, labels, flaps, and bands, all of which are covered by the provisions therefor in this part, regardless of the nature of the printing thereon, this part covers only printed matter consisting essentially of textual or pictorial matter produced by any printing process, and similar matter in manuscript or typewritten form. The text may be set forth in any language by means of any kind of characters. With the exceptions above indicated, this part does not cover any article in which printing is merely incidental to the primary use of the article or in which printing is employed mainly for coloration or to produce a decorative or novelty effect (see part 4 of this schedule)."

"Books not specially provided for, consisting essentially of textual matter:

|  |  |  |
|---|---|---|
| 270.45 | Wholly or almost wholly of foreign authorship_____ | 3% ad val. |
| 270.50 | Other _____ | 7% ad val." |

"Printed maps, globes, atlases, and charts (except tourist literature provided for in item 270.70) :

\*      \*      \*      \*      \*      \*      \*

Other:

\*      \*      \*      \*      \*      \*      \*

|  |  |  |
|---|---|---|
| 273.40 | Printed not over 20 years at time of importation_____ | 8.5% ad val." |

"Printed matter not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other:

|  |  |  |
|---|---|---|
| 274.85 | Susceptible of authorship_____ | 4% ad val." |

Plaintiff states that it "does not dispute that the merchandise is in part a diary and consists of bound books." Rather, it argues that the merchandise "is not blank, and should therefore not be classified under any of the provisions of Schedule 2, Part 4, as it consists of printed matter provided for in Part 5, Schedule 2, under Items 270.45, 270.50, 273.40 or 274.85." Alternatively, plaintiff adds that "if the Court should find that the Economist Diary is not printed matter provided for in Part 5 of Schedule 2, then plaintiff argues the Economist Diary consists of printed matter which is not accurately described as 'Diaries' and should be classified as 'Blank books, bound: . . . Other' under Item 256.58." (Plaintiff's brief, p. 3)

In simplest terms, the question presented is whether the Economist Diary has been properly classified by the customs officials under the provision which specifically covers "diaries", or whether it should have been classified under any of the various provisions urged by the plaintiff.

An examination of the record, consisting of the testimony of two witnesses and the various exhibits, will leave no doubt that the Economist Diary has been properly classified. The court has therefore determined that the Economist Diary is indeed a diary, both in fact and for customs purposes, and that it has been properly classified under the provision which specifically covers "diaries". Neither thorough research nor expertise in the customs laws of the United States could lead one to conclude otherwise.

Since the court has determined that the merchandise has been properly classified, no useful purpose will be served by an extensive discussion of the various claimed classifications. Furthermore, on the record herein presented, suffice it to say that under no circumstances could it be said that the plaintiff has borne its burden of proof that the merchandise has been erroneously classified. See *Border Brokerage Company, Inc.* v. *United States*, 65 Cust. Ct. 277, 280, C.D. 4089 (1970), appeal pending, and cases cited therein. See also *United States* v. *New York Merchandise Co. Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970).

Plaintiff introduced into evidence a sample of the Economist Diary that is the subject of this litigation. The sample has the appearance of a hard-covered book. On the front cover there are printed in gold leaf the words "The Economist Diary". The inside cover page states: "The Economist Diary American Edition prepared exclusively for Brooks Brothers".

In a brochure, which contains advertisements of plaintiff's merchandise, the article in question, entitled "The Economist Diary", is described as follows:

> "The Economist Diary is 10 [inches] x 8 [inches], printed on fine plate-finish parchment, spiral bound, and covered in handsome red leather. The title is blocked in gold."

Plaintiff admits that it "cannot be disputed that *The Economist Diary* is, in part, composed of pages suitable for use as a diary." It urges, however, that "many pages are clearly not suitable for the entering of records, notes or memoranda and are useful solely for the information presented." It adds that the "Economist Diary, with its text and maps, is sold and used primarily for the informational material, rather than its suitability for use as a diary." (Plaintiff's brief, page 12)

Based upon an examination of the sample Economist Diary submitted by the plaintiff, and the testimony of the witnesses, a finding

of fact can not be made that the Economist Diary is "sold and used primarily for the informational material" that it contains. It is not *merely* an article "composed of pages suitable for use as a diary" as contended by the plaintiff. It *is* a diary that *additionally* contains certain informational data of interest to the particular class of customers who purchase the diary. It would do violence to the essential nature of the merchandise to classify it under any provision other than the one that describes it perfectly. The description or label of "diary" has been properly chosen by those who have brought the article into being and have offered it for sale.

The witness for the plaintiff, reiterating that the merchandise was a reference book while admitting that it was "accurately described as a diary", stated as follows:

> "It is accurately described as a diary, but I wouldn't consider it as a diary. It is a book of information. You can use it as a diary and you can use it as a book of facts."

On cross-examination, plaintiff's witness admitted that a diary can contain "factual information", and that the Economist Diary "is offered as a diary", and "is sold as a diary".

Notwithstanding plaintiff's efforts to demonstrate that the Economist Diary is not a diary but a "book of facts", an examination of the diary reveals that there are more blank pages, used for recording events and appointments, than there are pages containing information. Admittedly, it is offered and sold as a diary.

Plaintiff stresses that the Economist Diary contains a "significant quantity of printed material". This, of course, is true but it does not change the essential nature of the article. The article is a diary which contains certain informational material in order to render it more useful to the particular class of buyers it seeks to attract. It is to be noted that the exhibits introduced at the trial, that are conceded to be "diaries", also contain "informational material". These diaries contain pages devoted to "birth stones and their meaning", "signs of the Zodiac", "wedding anniversaries", "notable dates * * *", "personal notes", "personal memorabilia", "calorific values", "vintage chart", etc. They may not contain as large a quantity of informational data as does the Economist Diary, but they obviously also contain pages devoted to textual or informational material. This additional material admittedly does not change their essential nature as "diaries". See *Borneo Sumatra Trading Co., Inc.* v. *United States*, 64 Cust. Ct. 185, 200, C.D. 3980, 311 F. Supp. 326, 337 (1970).

In the determination of this case the court has examined the available lexicographic definitions of "diary". The following, taken from *Webster's Third New International Dictionary* (1961) is illustrative:

> "1: a register or record of events, transactions, or observations kept daily or at frequent intervals: JOURNAL: *esp:* a daily rec-

ord of personal activities, reflections, or feelings 2 : a book intended or used for a diary."

Many of the legal issues raised have been treated in prior decisions. *United States* v. *American Railway Express Co. et al.*, 17 CCPA 10, T.D. 43317 (1929) ; *Louis Wolf & Co.* v. *United States*, 71 Treas. Dec. 905, T.D. 49010 (1937) ; *Baker, Irons & Dockstader and General Motors Overseas Operations* v. *United States*, 38 Cust. Ct. 435, Abs. 60571 (1957) ; *Arthur Kessler & Co. et al.* v. *United States*, 63 Cust. Ct. 513, C.D. 3944 (1969) ; *Los Angeles Tile Jobbers, Inc.* v. *United States*, 63 Cust. Ct. 398, C.D. 3925 (1969). Of the decisions examined the most helpful is the case of *Fred Baumgarten* v. *United States*, 49 Cust. Ct. 275, Abs. 67150 (1962). In the *Baumgarten* case the court described the merchandise before it as follows :

> "The imported article, as represented by plaintiff's exhibit 1, is a plastic-covered book, approximately 4¼ by 7⅜ inches in dimensions. Its first few pages contain, successively, the date '1961,' the notation 'Personal Memoranda,' calendars for the years 1960, 1961, and 1962, and a few statistical tables. The following 20-odd pages contain spaces for addresses and telephone numbers, each page more or less set aside for each letter of the alphabet. The remaining portion of the book consists of ruled pages allocated to the days of the year and the hours of the day and each headed with calendars for the current and following months. A blank-lined page, inserted at the end of each month's section, is captioned 'Notes.' " 49 Cust. Ct. at 276.

After quoting a definition of "diary", for all practical purposes identical to the one previously quoted here, the court concluded :

> "Under this definition, the particular distinguishing feature of a diary is its suitability for the receipt of daily notations; and, in this respect, the books here in issue are well described. By virtue of the allocation of spaces for hourly entries during the course of each day of the year, the books are designed for that very purpose. That the daily events to be chronicled may also include scheduled appointments would not detract from their general character as appropriate volumes for the recording of daily memoranda." *Ibid.*

Judicial authority, therefore, has adopted the crux of the lexicographic definitions that the "particular distinguishing feature of a diary is its suitability for the receipt of daily notations." The conclusion of the *Baumgarten* case, that "the books here at issue are well described", is equally applicable to the Economist Diary. It is clearly "suitable for the receipt of daily notations", and comes squarely within the definition of a "diary". Furthermore, notwithstanding the quantity of informational matter, it can not be denied that there are more pages suitable for diary entries than the aggregate of textual pages and maps.

Plaintiff in its advertising material states that the Economist Diary is "the most unusual and useful Diary ever printed". The statement

may perhaps be true, but it is still by its own description a "diary". Regardless of the incidental value or utility of the additional pages, the article is still primarily and essentially a diary. See *Nomura (America) Corp. v. United States*, 62 Cust. Ct. 524, 531, C.D. 3820, 299 F. Supp. 535, 541 (1969), *affirmed*, 58 CCPA 82, C.A.D. 1007, 435 F. 2d 1319 (1971).

Although the textual pages may add to the usefulness or value of the diary, clearly it is the diary portion of the Economist Diary that is essential or indispensable. See *U.S. Vitamin Corp. v. United States*, 43 CCPA 44, C.A.D. 607 (1956). As stated by Judge Worley in the *U.S. Vitamin Corp.* case, " 'essential' means something more than convenient, desirable, or preferable." 43 CCPA at 47. Without the diary portion, the Economist Diary could not be sold as a diary of any kind, nor would it attract economists or anyone else who wished to purchase a diary. At this late date it can not be questioned that it is the "primary design and function" that controls the customs classification of an article. See *Hancock Gross, Inc. v. United States*, 64 Cust. Ct. 97, C.D. 3965 (1970).

In view of the foregoing, it is the determination of the court that the Economist Diary was properly classified as a diary, and that it is a diary in fact and in law. This conclusion is strengthened by the fundamental principle of customs law that an *eo nomine* designation of an article without limitation includes all forms of that article. *Astra Trading Corp. v. United States*, 56 Cust. Ct. 555, 561, C.D. 2703 (1966) ; *Nootka Packing Co. et al. v. United States*, 22 CCPA 464, 470, T.D. 47464 (1935).

Consequently, the court holds that the merchandise herein, "The Economist Diary—1966", has been properly classified under item 256.56 of the Tariff Schedules of the United States as "Blank books, bound: Diaries * * *", and that it was properly assessed with duty at the rate of 20 per centum ad valorem.

Since plaintiff has not proven that the merchandise was erroneously classified, the protest is overruled. Judgment will issue accordingly.