**TEXAS APPAREL CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 82–05–00618.**

United States Court of
International Trade.

Oct. 25, 1988.

---

Stein Shostak Shostak & O'Hara (S. Richard Shostak, at oral argument and on the brief and Robert Glenn White, Los Angeles, Cal., on the brief), for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch (Kenneth N. Wolf, New York City, at oral argument and on the brief), for defendant.

## MEMORANDUM OPINION AND ORDER

RE, Chief Judge:

The question presented in this case pertains to the proper appraisement or valuation, for customs purposes, of 266 entries of certain wearing apparel imported from Mexico between July 1, 1980 and May 29, 1981. The Customs Service appraised the merchandise on the basis of computed value, pursuant to section 402(e) of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979, Pub.L. No. 96–39, § 201(a), 93 Stat. 194 (codified as amended at 19 U.S.C. § 1401a (1982)). The appraised value of the wearing apparel included an addition for the cost or value of sewing machines, including their repair parts and the cost of repairs, as an "assist" under 19 U.S.C. § 1401a(h)(1)(A)(ii).

Plaintiff contests the inclusion in the appraised value of the cost or value of the sewing machines as dutiable assists, and contends that 19 U.S.C. § 1401a(h)(1)(A)(ii) does not include general purpose machinery as assists. It maintains that "the only production equipment included as assists are the 'tools, dies, molds, and similar items ...' which are special purpose equipment having the dedicated and exclusive function of producing the discrete article in question." Specifically, plaintiff claims that the sewing machines are "general purpose equipment," and are not "tools, dies, molds, and similar items used in the production of the imported merchandise." Hence, plaintiff contends that the appraisement of the imported merchandise should not have included an addition for the cost or value of the sewing machines, and seeks a refund of the excessive duties paid, with interest.

Computed value is defined in 19 U.S.C. § 1401a(e) as follows:

(1) The computed value of imported merchandise is the sum of—

(A) the cost or value of the materials and the fabrication and other processing of any kind employed in the production of the imported merchandise;

(B) an amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise that are made by the producers in the country of exportation for export to the United States;

(C) any assist, if its value is not included under subparagraph (A) or (B); and

(D) the packing costs.

*Id.*

An "assist" is defined in 19 U.S.C. § 1401a(h)(1)(A) as follows:

As used in this section—

(1)(A) *The term "assist" means any of the following if supplied directly or indirectly,* and free of charge or at reduced cost, by the buyer of imported merchandise for use in connection with the production or the sale for export to the United States of the merchandise:

(i) Materials, components, parts, and similar items incorporated in the imported merchandise.

(ii) *Tools, dies, molds, and similar items used in the production of the imported merchandise.*

(iii) Merchandise consumed in the production of the imported merchandise.

(iv) Engineering, development, artwork, design work, and plans and sketches that are undertaken elsewhere than in the United States and are necessary for the production of the imported merchandise.

*Id.* (emphasis added).

The question presented is whether the cost or value of the sewing machines, re-

pair parts, and the cost of repairs were properly included by the Customs Service in the computed value of the imported merchandise as an "assist" under 19 U.S.C. § 1401a(h)(1)(A)(ii).

Pursuant to 28 U.S.C. § 2639(a)(1) (1982), the decision of the Customs Service is presumed to be correct, and the burden of proof is upon the party challenging the decision.

Contending that there are no material issues of fact in dispute, both parties moved for summary judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade. Upon examining the relevant statutes and supporting papers, the court concludes that there are no material issues of fact in dispute, and that plaintiff has not overcome the presumption of correctness that attaches to the Customs Services' determination. Consequently, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

On a motion for summary judgment, it is the function of the court to determine whether there are any factual disputes that are material to the resolution of the action. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The court may not resolve or try factual issues on a motion for summary judgment; it may only "determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *Yamaha Int'l Corp. v. United States,* 3 CIT 108, 109 (1982) [available on WEST-LAW, 1982 WL 2221]. In ruling on cross-motions for summary judgment, if no genuine issues of material fact exist, the court must determine whether either party is "entitled to judgment as a matter of law." *See* U.S.C.I.T.R. 56(d); *United States v. B.B.S. Elecs. Int'l Inc.,* 9 CIT 561, 566, 622 F.Supp. 1089, 1094 (1985).

Plaintiff contends that the term "assist," defined in 19 U.S.C. § 1401a(h)(1)(A)(ii), as "[t]ools, dies, molds, and similar items used in the production of the imported merchandise," should be construed strictly to encompass only equipment of a specialized nature that is used to produce the particular merchandise. According to plaintiff, the sewing machines in issue are capable of serving diverse functions for the manufacture of a wide variety of articles, and, therefore, are general purpose equipment that cannot be equated with "tools, dies, molds, and similar items." Hence, plaintiff maintains that it "was error to include the value of such general purpose machinery, sewing machines, in calculating the computed value of the wearing apparel...."

Defendant disagrees, and maintains that including an amount for the cost or value of "sewing machines in the appraised computed value of the merchandise is correct as a matter of law, regardless of whether the 'sewing machines' are within the statutory definition of 'assists.'" Defendant contends that, under the provisions of 19 U.S.C. § 1401a(e), the sewing machines are includable in computed value because they are an integral part of the "processing ... employed in the production of the imported merchandise...." *See* 19 U.S.C. § 1401a(e)(1)(A). In the alternative, defendant maintains that pursuant to 19 U.S.C. § 1401a(e)(1)(B), the cost or value of the sewing machines must be part of the "profit and general expenses" of the wearing apparel. Furthermore, defendant submits that the legislative history of the Trade Agreements Act demonstrates that the term "assist," as defined in 19 U.S.C. § 1401a(h)(1)(A)(ii), has a broad and expansive meaning which encompasses the sewing machines in issue.

It is evident from the submissions that there is no material issue of fact in dispute, but rather, only an issue of law. Namely, the parties are in disagreement as to whether the cost or value of the sewing machines, including their repair parts and costs of repairs, was properly included in the computed value of the imported merchandise as an "assist" pursuant to 19 U.S.C. § 1401a(e)(1)(C) and § 1401a(h)(1)(A)(ii). More specifically, the parties disagree as to whether the sewing machines, repair parts, and the costs of repairs constitute an "assist," which, in 19 U.S.C. § 1401a(h)(1)(A)(ii), is defined as "tools,

dies, molds, and similar items used in the production of the imported merchandise."

On judicial review, the fundamental question presented is whether, based upon the statutory language and the legislative intent which underlies the pertinent statutory provision, the interpretation of the statute by the Customs Service was reasonable.

It is axiomatic that statutes are to be interpreted so as to carry out the underlying legislative policy and intent. *See Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). It is also clear that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). If a statute is silent or ambiguous on a particular question, it is appropriate for the court to accord deference to the agency's interpretation of the statute if the interpretation is reasonable and consistent with the legislative intent. *See Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 233, 106 S.Ct. 2860, 2867, 92 L.Ed.2d 166 (1986).

Plaintiff maintains that "the intent of the legislature to limit the definition of assists to specialized items ... is evident from the history of the Trade Agreements Act of 1979, from the adoption and usage of the phrase 'tools, dies, molds,' and from the demonstrated concept and scheme of the new value code." It contends that the goal of the code is to value goods based on "actual foreign expenditures," rather than "all costs expended" in producing the merchandise, and, therefore, adjustments made under computed value must be "strictly limited to those set out in the code." According to plaintiff, the *"only* equipment 'used in the production of the imported merchandise' the cost or value of which is dutiable as an assist consists of 'tools, dies, molds' and items 'similar' thereto." (emphasis in original). Hence, plaintiff submits that it does not include general purpose machinery such as sewing machines.

An examination of the legislative history of the Trade Agreements Act reveals that Congress did not intend as narrow or restrictive a view of computed value, or of the term "assist," as suggested by plaintiff. The legislative history of the Trade Agreements Act of 1979 indicates that the Act "revise[s] section 402 of the Tariff Act of 1930, which specifies the methods for determining the value of an import for purposes of applying *ad valorem* duties, to make it consistent with the Customs Valuation Agreement negotiated in the [Mutilateral Trade Negotiations]." S.Rep. No. 249, 96th Cong., 1st Sess., *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 406. The amended version of section 402 contains five methods of customs valuation including computed value which is "based on production costs, profit and overhead." H.R.Rep. No. 317, 96th Cong., 1st Sess. 79 (1979).

The Report of the House Committee on Ways and Means (House Report) states that the computed value standard under the amended section 402 "conceptually follows the constructed value standard ... and the cost of production standard" under the former section 402. *See id.* at 94. Pursuant to the present section 402(e), the computed value of imported merchandise includes "any assist," which is defined in the present section 402(h)(1)(A). The House Report states that an "assist" is:

> a concept which, while taking on greater significance in customs valuation, has never before been defined by statute. The definition specifies those particular items or services which, when supplied directly or indirectly by the buyer of the imported merchandise, free of charge or at reduced cost, for use in connection with the production or the sale for export to the United States, are to be treated as an assist.

*Id.* at 81; *see also* S.Rep. No. 249, 96th Cong., 1st Sess., *reprinted in* 1979 U.S. Code Cong. & Admin.News at 407. According to the House Report, a goal of the new valuation code is "to ensure that these new rules are fair and simple, conform to commercial reality, and allow traders to

predict, with a reasonable degree of accuracy, the duty that will be assessed on their products." H.R.Rep. No. 317, at 79.

It is evident that the aim of the new valuation scheme is to establish a uniform, fair, and greatly simplified system for the valuation of imports in order to reduce non-tariff barriers to trade and to promote international trade. *See id.* at 94. As stated in the legislative history, the computed value standard was developed to aid Customs and the importer in determining customs value. *See id.* The new code simplifies valuation since it "confines the computed value standard to the cost of producing the imported merchandise. . . ." *Id.* Accordingly, the Custom Service's interpretation of 19 U.S.C. § 1401a(h)(1)(A)(ii) as including items directly related to the production of merchandise, such as a sewing machine to the sewing of wearing apparel, cannot be said to be contrary to the goals and intent of the new valuation code. Including the value of the sewing machine, which is essential to the fabrication of the apparel, fairly and accurately reflects "the cost of producing the imported merchandise."

Plaintiff contends that the legislative intent of section 1401a(h)(1)(A)(ii) was to exclude general purpose machinery from the definition of items similar to "tools, dies, molds." For support, plaintiff refers to a questionnaire sent by the Regional Commissioner of Customs describing the scope of assists as not including general purpose machines. Hence, plaintiff contends that Customs' change in policy in 1980, to include general purpose machinery in its definition of assists, is erroneous. Defendant, however, points out that the questionnaire cited by plaintiff "did not reflect the position of the Customs Service," but was a "document generated by a *regional* office." (emphasis in original).

Defendant stresses that the Customs Service, in interpreting the statute, has differentiated between those general purpose machines which are used in the actual production of the specific imported article, and those that are not used in the actual production of the merchandise. Indeed, the Customs Service has specifically interpreted the statute to include "general purpose equipment, such as sewing machines, ovens, drill presses, etc., . . . used abroad in the production of merchandise imported into the United States, [as] dutiable under section 401(h)(1)(A)(ii)." *See* C.S.D. 81–186, 15 Cust.B. & Dec. 1099, 1100. On the other hand the Customs Service has held that "air-conditioning equipment, a power transformer, telephone switching equipment and emergency generators do not fall within the definition of assist, as they are not used in the production of the merchandise." *Id.* at 1101. Customs' interpretation clearly distinguishes between machinery which works directly on the merchandise or contributes directly to its manufacture, e.g., sewing machines, drill presses and ovens, and machinery which although used by the industry is not used directly in the production of the merchandise itself, e.g., air-conditioners and emergency generators.

It is well settled that the court will defer to the agency's interpretation of the statute if the interpretation is reasonable, and is consistent with the legislative intent and guiding purpose of the statute. *See Chevron U.S.A. Inc.,* 467 U.S. at 843–44, 104 S.Ct. at 2781–82. Machinery such as air-conditioning and power generators, which may be used by manufacturers and may be invaluable, is not used directly to produce the merchandise. The sewing machines in issue, however, are used directly "in the production of the imported merchandise." Hence, the court concludes that Customs' interpretation of the statute is reasonable and consistent with congressional intent.

Citing the canon of construction of *ejusdem generis*, plaintiff contends that general purpose equipment such as sewing machines is not similar to "tools, dies, [and] molds." *See Nomura (America) Corp. v. United States,* 62 Cust.Ct. 524, 530, C.D. 3820, 299 F.Supp. 535, 540 (1969), *aff'd,* 58 CCPA 82, C.A.D. 1007, 435 F.2d 1319 (1971). According to plaintiff tools, dies, and molds "are all devices employed for their discrete form and function to shape or work on a material, either manually or by being installed in a powered machine to

mechanically emulate the same manual application." It asserts that " 'similar items used in the production of the imported merchandise' must possess the essential characteristics or purposes of the exemplar items." Thus, plaintiff maintains that "the needles, holders, cams, [and] die slides" are similar to tools, dies, and molds, and not the sewing machines, as they are actually "tool holders."

Defendant replies that plaintiff's definition of tools, as the parts of machines that perform specific cutting or forming, is too restrictive. Defendant defines the term tool more broadly as "an implement used to modify raw materials for human use." *See* 26 *Encyclopedia Americana* 841 (1973). It maintains that "[t]he term 'similar items used in the production of the imported merchandise' was intended to encompass precisely what it states—to include as assists all production equipment and machinery that were used to produce the imported merchandise." The defendant explains that the limiting language of the statute was necessary because "there are many articles the buyer may provide the seller which do not *work* on the merchandise, *per se,* but are directly utilized 'for use in connection with the production of merchandise.' " (emphasis in original). As examples the defendant refers to articles which are not similar to tools, dies or molds but are nevertheless used generally in the production of merchandise, such as motors, generators, and computers.

In interpreting section 1401a(h)(1)(A)(ii) it is helpful to ascertain whether the sewing machines essentially or principally perform the same function as tools. In the case of *Durst Indus. v. United States,* 73 Cust.Ct. 160, C.D. 4568 (1974), the court faced a similar question. *Durst* involved the dutiable status of two types of water faucets, centerset and combination, which were classified under 680.20, TSUS, which provided for "[t]aps, cocks, valves, and similar devices, however operated, used to control the flow of liquids...." *See Durst,* 73 Cust.Ct. at 162. Plaintiff urged that the articles were not within the common meaning of "taps," "cocks," or "valves" and were not similar to these items. *Id.* at 164.

The court held that the combination faucets were within the meaning of "taps," "cocks," or "valves." *Id.* at 167. The court also held that the centerset faucets were *"ejusdem generis* with taps, cocks and valves" because taps, cocks and valves control the flow of liquids, which was their common function and since the imported articles functioned primarily to control the flow of liquids, they were similar devices to taps, cocks, and valves within item 680.20, TSUS. *See id.*

In the present case, the function performed by the sewing machines, which is to construct the apparel by sewing together the fabric, is essentially or principally the same as that of a tool, die, or mold. Although a tool may be defined as plaintiff suggests, as a manual instrument, a tool may also be defined more broadly as "an implement or object used in performing an operation or carrying on work of any kind ..." *See Websters Third New International Dictionary* 2408 (1981). It is clear, therefore, that in this industry a sewing machine is a device similar to a "tool, die, [or] mold ... used in the production of the imported merchandise."

In view of the foregoing, the court holds that the cost or value of the sewing machines, repair parts, and the cost of repairs were properly included by the Customs Service in the computed value of the imported merchandise as an "assist" under 19 U.S.C. § 1401a(h)(1)(A)(ii). Accordingly, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.