ARIS ISOTONER GLOVES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83-06-00866

(Decided October 10, 1990)

*Donohue and Donohue (James A. Geraghty)* for the plaintiff.
*Stuart M. Gerson*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice *(Saul Davis)* for the defendant.

AQUILINO, *Judge*: This case, which challenges the value of imported dress gloves computed pursuant to section 201 of the Trade Agreements Act of 1979, 19 U.S.C. § 1401a, is described in the court's Slip Op. 88–154, 12 CIT 1064, (Nov. 7, 1988), familiarity with which is presumed.

Before the court at the time were cross-motions for summary judgment, which could not be resolved on the papers submitted in light of the decision in *Texas Apparel Co. v. United States*, 12 CIT 1002, 698 F.Supp. 932 (1988), which was handed down after their filing herein. Hence, this court directed the parties to determine if they could resolve themselves the issues of fact, to which that decision had given rise, before any further, formal proceedings.

Subsequent to Slip Op. 88–154, however, the plaintiff first appeared as *amicus curiae* in support of the Texas Apparel Co.'s appeal to the U.S.

Court of Appeals for the Federal Circuit from the CIT judgment of dismissal. The court of appeals affirmed that judgment, 883 F.2d 66 (1989), whereupon counsel presented a joint petition for a writ of certiorari to the U.S. Supreme Court which has been denied, 110 S.Ct. 728 (1990).

## I

Part of plaintiff's motion for summary judgment is a Schedule A, which lists categories encaptioned knitting machines, sewing machines, presses (without dies or drills), knives and cutters, other machines, major machine components, and dies and tools. The parties have now filed a stipulation which states that the following items on that schedule,

> which were furnished free of charge by the plaintiff importer to the foreign manufacturer of the subject imported merchandise, the book values of which were included in the appraised values of said merchandise, are not in the nature of assists within the meaning of 19 U.S.C. section 1402(h)(1)(a) [*sic*], and are not otherwise dutiable, to wit:

| Description | Value |
| --- | --- |
| Fans | $1,000.00 |
| Time clocks | 103.75 |
| Wall clocks | 348.60 |
| Vacuum cleaners | 830.00 |
| Knife sharpener | 155.58 |
| Large drill press for making machine tools | 1,513.03 |
| Small drill press for making machine tools | 302.61 |
| Total | $4,253.57 |

The effect of this agreement, of course, is that the plaintiff is entitled to judgment providing for refund of any duties paid, based on the value of those articles.

## II

Notwithstanding *Texas Apparel*, the plaintiff continues to move for summary judgment as a matter of law as to the remainder of its Schedule A. It has submitted a supplemental memorandum which concludes (at pages 25-27) as follows:

> * * * [T]he court is not bound by the Federal Circuit's affirmance of *Texas Apparel Co.* since the appellate court misapprehended the extent to which the lower court had considered the dispositive issues. Moreover, the * * * lower court's opinion was flawed in several respects and thereby is not *stare decisis* on the issues in this case.
>
> The *Texas Apparel Co.* court improperly deferred to Customs' interpretation of terms in the appraisement title of the Tariff Act * * * * [A] court should not defer to agency interpretations of revenue statutes since the judicial deference doctrine applies only to regulatory statutes. Although principled well reasoned Customs rulings might be persuasive, although not binding, the rulings which express Customs' position in this case were conclusory and lacking in reasoned analysis . * * *
>
> Even if *Chevron* and it[s] progeny were applicable, the conditions warranting deference are not present in this case. By their terms,

those decisions require a court to apply a two pronged test before deferring to agency interpretation. First, the court should ascertain congressional intent by applying traditional tools of statutory construction. If that intent can be gleaned from extrinsic aids, legislative history, or intrinsic aids, e.g., *ejusdem generis* and *noscitur a sociis*, the issue is concluded. If not, and the statute is silent or ambiguous, a court should defer to interstitial gap-filling, * * * effected by the agency through interpretation case-by-case. At that point, the court is responsible to determine whether the interpretation is reasonable. The court in *Texas Apparel Co.* [ ] should have acknowledged that the legislative history was silent on the precise issue, but then should have ascertained congressional intent by "employing traditional tools of statutory construction," that is, *ejusdem generis* and *noscitur a sociis*. If so, the court would have complied with the *Cardoza-Fonseca* formulation and found no occasion to defer. In other words, the court would never have had to determine whether Customs' interpretation was reasonable.

In the end, Customs' interpretation was unreasonable because it was not based on extrinsic evidence of congressional intent, the application of traditional rules of statutory construction, or on any other principle which might have had persuasive authority. There was no basis whatsoever for applying the broadest possible interpretation to the term "tools" in section 402(h)(1)(A)(ii). Under recognized rules of statutory construction, the term should be limited, and construed in harmony with dies and molds. For this reason too the *Texas Apparel Co.* analysis was flawed and should be rejected.

On its part, the defendant has interposed a motion to strike this memorandum, arguing, among other things, that these points "have been extensively briefed to date, and plaintiff was simply out of time when it filed its memorandum of July 20, 1990." In response, the plaintiff admits to a "misunderstanding" as to the time for submissions subsequent to a status conference with the court. Be that as it may, there is no showing that the defendant has been prejudiced by plaintiff's timing, and the motion to strike therefore should be denied. *See generally Jimlar Corp.v. United States*, 10 CIT 671, 647 F.Supp. 932 (1986); *Nuove Industrie Elettriche di Legnano S.p.A. v. United States*, 14 CIT 334, 337–39, 739 F.Supp. 1567, 1570-72 (1990).

Of course, this denial of defendant's procedural motion does not necessarily mean that its position on the merits, as set forth in its cross-motion for summary judgment, is without substance. This court was not privy to the proceedings in *Texas Apparel*, but plaintiff's counsel herein apparently were, at least at the appellate level, and it seems quite unlikely that the arguments quoted at length above have not already been pressed in the higher courts. Indeed, the issues raised in the certiorari petition were reported as follows:

* * * (1) Does judicial deference doctrine restated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837 * * * (1984), and refined in *INS v. Cardoza-Fonseca*, 480 U.S. 421 * * * (1987), apply to substantive revenue statutes? (2) Should * * * U.S.

Court of International Trade defer to agency interpretation of statutes within court's subject matter jurisdiction? (3) Does judicial deference doctrine extend to pure questions of statutory construction as inferred by U.S. Court of Appeals for Federal Circuit in this case, or only to agency construction of statutes as applied to specific facts, as stated by, *inter alia*, U.S. Court of Appeals for District of Columbia Circuit in *Union of Concerned Scientists v. U.S. NRC,* 824 F2d 108 * * * (CA DC 1987), and *International Union UAW v. Brock*, 816 F2d 761 (CA DC 1987)?

58 U.S.L.W. 3400 (Dec. 19, 1989). On the other hand, even if plaintiff's arguments are being articulated for the first time now, they do not convince this court that either *ejusdem generis* or *noscitur a sociis* supplants *stare decisis.*

Clearly, the reasoning in *Texas Apparel* went beyond mere deference to the Customs Service. The court examination in that case of the legislative history of the Trade Agreements Act "reveal[ed] that Congress did not intend as narrow or restrictive a view of computed value, or of the term 'assist,' as suggested by plaintiff." 12 CIT at 1005, 698 F.Supp. at 935. The court agreed that there is a distinction between

machinery which works directly on the merchandise or contributes directly to its manufacture, e.g., sewing machines, drill presses and ovens, and machinery which although used by the industry is not used directly in the production of the merchandise itself, e.g., airconditioners and emergency generators.

12 CIT at 1007, 698 F.Supp. at 936. And the court found that the

function performed by the sewing machines, which is to construct the apparel by sewing together the fabric, is essentially or principally the same as that of a tool, die, or mold. Although a tool may be defined as plaintiff suggests, as a manual instrument, a tool may also be defined more broadly as "an implement or object used in performing an operation or carrying on work of any kind * * *" *See Websters Third New International Dictionary* 2408 (1981). It is clear, therefore, that in this industry a sewing machine is a device similar to a "tool, die, [or] mold * * * used in the production of the imported merchandise."

12 CIT at 1008, 698 F.Supp. at 937 (brackets in original).

Following this reasoning, this court is unable to conclude that the term "tools" found in the statutory definition of "assist", 19 U.S.C. § 1401a(h)(1)(A), cannot encompass "machine" tools. Of course, this does not mean that such tools, whatever their individual degrees of sophistication, are used "directly" in the production of merchandise. Hence, for example, the plaintiff is entitled to recovery as to the large and small drill presses listed above but not as to the "Glove die - used in presses for cutting material", plaintiff's Exhibit 1.

Judgment will enter accordingly, with defendant's motion to strike denied. So ORDERED.