Slip Op. 00-5

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

———————————————————————
:
SALANT CORPORATION,                          :
:
        Plaintiff,                          :            Court No. 97-06-00977
:
        v.                          :            **Before: Barzilay, Judge**
:
THE UNITED STATES,                          :
:
        Defendant.                          :
———————————————————————

[Plaintiff's motion for summary judgment denied. Defendant's cross-motion for summary judgment granted.]

Decided: January 14, 2000

Sandler, Travis & Rosenberg, P.A. (Edward M. Joffe, Beth C. Ring, Gerson M. Joseph) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Change, International Trade Field Office, (John J. Mahon), Civil Division, Department of Justice, Commercial Litigation Branch; Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

## OPINION

### I. INTRODUCTION

**BARZILAY, JUDGE:**

This case was brought by Plaintiff Salant Corporation ("Salant"), to contest the valuation of certain men's shirts by the United States Customs Service ("Customs"). Plaintiff challenges Customs' inclusion of the value of material supplied by Plaintiff but scrapped or wasted during the manufacturing process, within the term assist as used in 19 U.S.C. §1401a(h)(1)(A) (1994). The parties have cross-

moved for summary judgment.

For the reasons set out in the following opinion, the Court holds that the fabric waste generated during the manufacturing process of imported shirts is an "assist" under 19 U.S.C. § 1401a(h)(1)(A), and thus its value is properly included in transaction value for appraisement purposes. Therefore, Customs' motion for summary judgment is granted.

## II. BACKGROUND

Salant supplies rolls of fabric free-of-charge to the manufacturers of men's shirts pursuant to contracts for the "cut, make, and trim" ("CMT") of the shirts. *Mem. of Law in Support of Pl.'s Mot. for Summ. J.* at 1 ("*Pl.'s Mem.*"). During the manufacturing process, the portion of fabric falling outside the shape of the cut components is scrapped by the manufacturers as waste. *Id.* Following importation of the shirts, Customs appraised them under transaction value, 19 U.S.C. §1401a(b)(1)(C), which defines that value as "the price actually paid or payable for the merchandise when sold for exportation to the United States, plus amounts equal to . . . the value, apportioned as appropriate, of any assist." The term "assist" is defined by 19 U.S.C. §1401a(h)(1)(A) as follows:

> The term "assist" means any of the following if supplied directly or indirectly, and free of charge or at reduced cost, by the buyer of imported merchandise for use in connection with the production or the sale for export to the United States of the merchandise:
>
> (i) Materials, components, parts, and similar items incorporated in the imported merchandise.
> (ii) Tools, dies, molds, and similar items used in the production of the imported merchandise.
> (iii) Merchandise consumed in the production of the imported merchandise.
> (iv) Engineering, development, artwork, design work, and plans and sketches that are undertaken elsewhere than in the United States and

are necessary for the production of the imported merchandise.

Some background on Customs' past practices regarding assists is instructive. From 1984 to 1995, Customs consistently held that scrap or waste in a CMT operation was not considered an assist within the meaning of 19 U.S.C. §1401a(h)(1)(A).[1] In 1995, after accepting public comment, Customs published notice revoking its earlier rulings and issued Headquarters Ruling Letters ("HRL") 543831 and 545909, which maintained that fabric waste generated in a CMT was part of an assist within the terms of the statute as "merchandise consumed in the production of imported merchandise."

Consistent with its recent inclusion of waste within the definition of an assist, Customs appraised the imported merchandise at its FOB value, and included as assists both the cost of the fabric waste which was scrapped during the CMT process as well as the cost of the fabric incorporated into the shirts in the manufacturing process. Thereafter, Plaintiff brought this suit, contending that it is entitled to summary judgment because fabric waste does not come within the definition of an assist. *Pl.'s Mem*. at 7. In support of its claim, Plaintiff asserts that the waste is neither "material incorporated" nor "merchandise consumed" within the plain meaning of the assist statute, as examined through its legislative history. Plaintiff contends further that even if doubt exists as to whether waste is included within the definition of an assist, that doubt should be resolved in favor of the importer. Defendant responded with a cross-motion for summary judgment, asserting that (1) Customs' decision to reevaluate whether fabric waste should be included as an assist is entitled to deference by the Court as a reasonable interpretation of an ambiguous statute; (2) Salant's interpretation of the plain meaning of

---

[1]Examples of Customs Headquarters Ruling Letters ("HRLs") holding that scrap was not considered an assist are HRLs 543093, 546234, 544758, 544662.

the assist statute is simply incorrect; (3) Customs' construction of the plain meaning of the statute is reasonable and should be upheld; and (4) Salant's claim that ambiguity should be resolved in favor of the importer is meritless. *Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Cross-Mot. For Summ. J. in its Favor* at 8 ("*Def.'s Opp'n*").

The Court holds in Defendant's favor and hereby grants Defendant's motion for summary judgment because there is no genuine issue of material fact, and because under the plain meaning of the statute read with the facts and circumstances of this case, the definition of assist properly includes fabric waste.

### III.  Standard of Review

Plaintiff has invoked this Court's jurisdiction under 28 U.S.C. § 1581(a), contesting Customs' appraisal of men's shirts. "Customs' appraisal value is presumed to be correct and the burden of proof is upon the party challenging the decision." *Chrysler Corp. v. United States*, 17 CIT 1049, 1053 (1993) (citing 28 U.S.C.§ 2639(a)(1)). Yet, the issue before this Court is one of statutory construction: whether Customs correctly determined that scrap or waste is included within the meaning of "assist" as defined by 19 U.S.C. §1401a(h)(1)(A). The standard of review for such questions of law is *de novo. Intel Singapore, Ltd. v. United States*, 83 F.3d 1416, 1417-18 (Fed. Cir. 1996). As the Court of Appeals for the Federal Circuit has explained, "although the presumption of correctness applies to the ultimate classification decision, . . . the presumption carries no force as to questions of law." *Universal Electronics, Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997). On a motion for summary judgment, the court must determine whether there is any factual dispute as to which there is "a genuine issue for trial. . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 249 (1986).

As the parties agree that there are no genuine issues of material fact, the presumption of correctness does not factor into the Court's analysis. The Court's remaining task is to determine, based upon the legislative intent and statutory language, whether or not Customs' interpretation of the assist statute was correct, and whether either party is entitled to judgment as a matter of law. *See* USCIT R. 56(d); *See also Texas Apparel Co. v. United States*, 12 CIT 1002, 1004, 698 F. Supp. 932, 934 (1988), *aff'd per curiam*, 883 F.2d 66 (Fed. Cir. 1989).

Within the *de novo* standard, Customs asserts that its ruling was reasonable and that it is therefore entitled to deference in accordance with *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). The Court notes the teaching of the Supreme Court that "[d]eference can be given . . . without impairing the authority of the court to make factual determinations, and to apply those determinations to the law, *de novo.*" *United States v. Haggar Apparel Co.*, 526 U.S. 380, —, 119 S.Ct. 1392, 1399 (1999).

The language of *Chevron* sets up a two-pronged test for according deference to an agency's statutory interpretation. In essence, if Congress' intent is clear, no deference is given the agency's construction; however, if Congress' intent is unclear, the court must defer to the agency's interpretation if it is a reasonable construction of the statute.[2] *Chevron* deference has been expanded from statutory

---

[2]The specific test is set out in the *Chevron* opinion as follows:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has

interpretation to administrative regulations. *Haggar*, 526 U.S. at —, 119 S.Ct. 1392, 1400. "Like other courts, the Court of International Trade must, when appropriate, give regulations *Chevron* deference." *Id.* (citing *Atlantic Mut. Ins. Co. v. Commissioner*, 523 U.S. 382, 389 (1998)).

The Court notes the Federal Circuit's decisions in *Generra Sportswear Co. v. United States*, 905 F.2d 377 (1990) and *Mead Corp. v. United States*, 185 F.3d 1304 (1999). In *Generra*, the Federal Circuit upheld Customs' inclusion of the value of quota payments in transaction value as part of the price paid or payable. *See* 905 F. 2d at 379. The value statute at issue in *Generra* did not explicitly set out quota payments as one of the enumerated items making up the price. *See* 19 U.S.C. §1401a(b)(4)(A). The Federal Circuit held that the agency's interpretation was sufficiently reasonable under *Chevron*. *See* 905 F. 2d at 379. In *Mead*, however, the Federal Circuit declined to extend *Chevron* deference to Customs' classification rulings: "*Haggar*, and thus *Chevron* deference, does not extend to ordinary classification rulings." 185 F.3d at 1307.[3] Defendant contends that deference is

> directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-43.

[3]In *Mead*, the Federal Circuit detailed its reasons for declining to extend *Chevron* deference so far. *Id.* at 1307. The court stated that because a regulation is subject to a notice and comment period prior to promulgation, as well as petitions to amend or repeal the regulation after promulgation, a regulation "thus represents a reasoned and informed articulation of Customs' statutory interpretation, which serves to 'clarify the rights and obligations of importers.'" *Id.* (quoting *Haggar*, 119 S.Ct. at

appropriate in this case because "the ruling was subject to notice and comment by the interested public which submitted its views to the agency before the ruling was published." *Def.'s Reply to Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J.* at 7 ("*Def.'s Reply Br.").*

Plaintiff counters; however, that Customs rulings are not necessarily entitled to deference, and that this ruling should not be afforded deference in particular because it reversed a long standing agency interpretation and failed to articulate a policy reason for doing so. *Pl.'s Mem. of Law in Reply to Def.'s Resp. to Pl.'s Mot. for Summ. J.* at 4 (*"Pl.'s Reply Br."*). Both parties extensively and ably briefed their conflicting views on this deference issue. The Court, however, need not decide whether Customs' reinterpretation of the value statute in this case is entitled to *Chevron* deference. Rather, the Court, as the "final authority on issues of statutory construction," employs "the traditional tools of statutory construction," and finds that the fabric waste comes within the plain meaning of the term "assist." *See Chevron*, 467 U.S. at 843 n.9. Therefore, step two of the *Chevron* analysis is unnecessary.

## IV. Discussion

A. *The plain language of the statute supports Customs' decision to include the entire bolt of fabric as an assist.*

"The first and foremost 'tool' to be used is the statute's text, giving it its plain

---

1398). However, "Customs *rulings* do not carry the force of law and are not, like regulations, intended to clarify the rights and obligations of importers beyond the specific case under review. Instead, a ruling merely interprets and applies Customs law to 'a specific set of facts.'" *Id.* (quoting 19 C.F.R. § 177.1(d)(1))(emphasis added).

meaning." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998). First, the material must be "supplied directly or indirectly, and free of charge or at reduced cost, by the buyer. . . ." 19 U.S.C. § 1401a(h)(1)(A). It is uncontested that Salant does supply entire bolts of fabric free of charge to shirt manufacturers. Second, the fabric must fit within the plain language of subsection (i), "materials . . . incorporated in the imported merchandise," or subsection (iii), "merchandise consumed." Defendant does not contest Plaintiff's assertion that waste fabric is not "material incorporated." Therefore, the Court need only address whether the waste falls within the plain language definition of "merchandise consumed" pursuant to subsection (iii). The Court finds that the plain meaning of the phrase "merchandise consumed" accurately describes the waste or scrap in this case; it thus follows that Customs' determination to include waste fabric within the definition of an assist was correct.

"In determining the common meaning of a term, courts may and do consult dictionaries, scientific authorities, and other reliable sources of information including testimony of record." *Holford USA Ltd. v. United States*, 19 CIT 1486, 1493-94, 912 F. Supp. 555, 561 (1995) (citing *Nippon Kogaku (USA), Inc., v. United States*, 673 F. 2d 380, 382 (C.C.P.A. 1982)). Plaintiff has provided the Court with a litany of dictionary definitions of "merchandise," all essentially agreeing that the term is defined as goods or commodities bought or sold. *Pl.'s Mem.* at 8. Plaintiff claims that because the waste generated during the CMT process in and of itself has no value, it is not a good or commodity that can be bought or sold. *Id.* Hence, it does not fit within the definition of "merchandise," and is more properly characterized as "materials." *Id.* at 8-9.

Plaintiff makes this argument because if the fabric waste is described only by the term "materials" and not "merchandise," it is not covered by the language defining an assist because clearly,

the fabric waste is not "incorporated in the imported merchandise." 19 U.S.C. § 1401a(h)(1)(A)(i). If, on the other hand, the fabric waste is merchandise as that term is used in the value statute, then the fabric waste is an assist because it is "consumed in the production of the imported merchandise." 19 U.S.C. 1401a(h)(1)(A)(iii). The term "consume," as Defendant notes, is defined as "to utilize (an economic good) in the satisfaction of wants or the process of production. . . ." *Def.'s Opp'n* at 20 n.13 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 490 (1993)). It is undisputed that the fabric waste generated by the manufacturing process is valueless and hence disposed of during the CMT process. *See Pl.'s Mem.* at 2; *Def.'s Opp'n* at 3. It is certainly utilized in the process of production, and Defendant's statement that the fabric left over from the manufacture of the shirts "was consumed in the manufacture of those shirts by being rendered worthless" is thus correct. *Def.'s Opp'n* at 20.

Plaintiff further contends that "Congress made a deliberate distinction between 'materials' and 'merchandise,' and expressly excluded 'materials' from subsection (iii)." *Pl.'s Mem.* at 10. Plaintiff argues that the GATT Valuation Code used the term "materials" for both items "incorporated into" and "consumed in," but that the statute as passed by Congress refers to "materials" in subsection (i) only and "merchandise" in subsection (iii) only. *Id.* at 10.

Defendant offers an alternative and equally feasible explanation for the use of the different terms in different sections of the statute. Significantly, the Court notes that while Plaintiff provided the Court with multiple definitions of "merchandise," it neglected to render a single dictionary definition of "materials." Rather, it is Defendant that provides the Court with the following definition: "that of which anything is composed or may be constructed," or "matter or its analog considered as a component part

of something." *Def.'s Opp'n* at 22 (quoting FUNK & WAGNALLS STANDARD DICTIONARY OF THE

ENGLISH LANGUAGE at 1526 (1956)).   Defendant explains that the drafters of the statute may have

intended to use the term "materials" to relate to something consumed or utilized in the process of

production and the term "merchandise" to refer to the "actual physical content of the imported articles."

*Id.*

        Although the Court recognizes that the terms "merchandise" and "materials" are not identical,

this distinction in word choice does not by itself compel the inference that Congress deliberately

intended to exclude waste fabric from the definition of an assist.  Plaintiff incorrectly construes the literal

meanings of the terms in a vacuum; a statute must be construed as a whole and full force and effect

given to *all* the language contained therein.  *See Pitney-Bowes, Inc. v. United States*, 59 Cust. Ct.

181, 188; 273 F. Supp. 403, 409 (1967).  Considering the statute as a whole, it is neither clear nor

evident that Congress' use of the two similar yet distinct terms "material" and "merchandise" requires

the conclusion that fabric waste is not part of an assist.  Hence, the Court must employ further methods

of statutory construction to properly uncover Congress' intent.

        B.        *The structure and history of the statute indicate that waste fabric is properly*
                  *included as an assist.*

         "Beyond the statute's text, those 'tools' [of statutory construction] include the statute's

structure, canons of statutory construction, and legislative history.  *Timex*, 157 F.3d at 882 (citing

*Dunn. v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 470-79 (1997)).  In this case

legislative history includes an examination of the GATT Valuation Code, because "Title II [Customs

Valuation] . . . implement[ed] in U.S. law the Agreement on Implementation of Article VII of the

General Agreement on Tariffs and Trade (Customs Valuation Agreement). . . ." S. Rep. 96-249 at 108

(1979),  *reprinted in* 1979 U.S.C.C.A.N 381, 494.  As such, the definition of assist, gleaned from the

Customs Valuation Agreement, was codified into law for the first time by the statute.  Upon

examination of these factors, the Court determines that waste fabric may properly be included as part

of an assist.

Plaintiff asserts that the history of the valuation statute shows an intent to define the term assist

narrowly.  However, nowhere in the legislative history is the "narrow definition" goal found.  Rather, the

Senate Report states that "[t]he purpose of customs valuation is to establish the value of imported

goods for the assessment of those customs duties which are levied on an *ad valorem* basis." *Id*.

Plaintiffs overstates the clear intention of the drafters of the GATT Valuation Code: the policy behind

the construction of the code is to clarify, not necessarily narrow, the definition of valuation.  As

Defendant indicates,  "a goal of the new valuation code is 'to ensure that these new rules are fair and

simple, conform to commercial reality, and allow traders to predict, with a reasonable degree of

accuracy, the duty that will be assessed on their products." *Def.'s Opp'n* at 15  (quoting *Texas*

*Apparel Co. v. United States*, 12 CIT at 1006, 598 F. Supp. at 936).

Defendant correctly notes that inclusion of fabric waste in the definition of assist reflects

commercial reality.  "Because garments are not composed of fabric components which meet exactly at

the appropriate angles, excess yardage of fabric is always required to produce a given quantity of

apparel." *Def.'s Opp'n* at 18.  The commercial reality is that fabric loss is simply an unavoidable

consequence of shirt manufacture.  As such, the assist is more appropriately defined as the entire

amount of fabric supplied by Salant prior to the CMT of the shirts, rather than the resulting fabric

actually incorporated into the shirts following the CMT process.  This definition comports with the language of the statute.

The Court recognizes that Customs' established past practice was to determine that scrap or waste in a CMT operation was not an assist within the meaning of the 19 U.S.C. §1401a(h)(1)(A). However, Customs acted within its discretion in changing its practices to include waste within the definition of an assist, because this change comports with the wording of the statute.  The terms of the statute demonstrate that it is the entire bolt of fabric itself and not merely the scrap that must be considered when determining what is an assist.  The statute defines an assist as that which is supplied by the buyer to be used in connection with the production of the imported merchandise.  *See* 19 U.S.C. § 1401a (b)(1)(A).  Clearly, Salant supplied the entire bolt or bolts of fabric to the manufacturers. Therefore, in determining what is "merchandise," the Court must consider the entire fabric and not merely the waste portion.  Further, excluding fabric waste from the definition of assist would complicate, rather than simplify, the meaning of the valuation statute.  Considering the entire portion of fabric provided to the manufacturer as an assist is certainly much simpler than determining which sections of the fabric supplied will be discarded and then discounting that portion of the fabric from the assist.

> C.      *The fact that inclusion of fabric waste as part of an assist accords with Generally Accepted Accounting Principles further supports Defendant's position that Congress intended to include waste within the definition of assist.*

Defendant correctly states that Congress intended the valuation statute to be interpreted in

accordance with the Generally Accepted Accounting Principles ("GAAP").[4]  From this fact, Defendant

appropriately draws the inference that because inclusion of fabric waste in the definition of an assist is in

accordance with GAAP, inclusion of fabric waste in the definition of an assist is in accordance with

Congressional intent.  In its reply brief, Plaintiff "does not dispute that the cost of the waste may be

computed in accordance with GAAP." *Pl.'s Reply Br.* at 11.    What Plaintiff does dispute is the

relevance of the GAAP analysis to determination of "the *definition* of an assist rather than the

*valuation* of an assist."  *Id.* at 10.  Plaintiff argues that while the valuation of an assist is properly

completed in accordance with GAAP, the original determination of whether a particular article is an

assist at all involves no reference to GAAP whatsoever.  In fact, Plaintiff argues further that "the

government has explicitly recognized that GAAP could not be used to determine what components

were an assist." *Id.* at 11.  Plaintiff cites HRL 543093 for its proposition that the definition of an assist

may not be determined by reference to GAAP, which states:

> Finally, even though the importer's accounting records for its consigned components
> reflected yielded costs, which practice conforms to generally accepted accounting
> principles, that fact should not be determinative of the issue in this case.

HRL 543093.

The Court does not read this language as a prohibition against interpreting the definition of an

assist in accordance with GAAP.  At best, HRL 543093 merely indicates that the fact that a definition

comports with GAAP may not be the decisive factor in the determination of an assist.  This recognition

does not lead to the conclusion that if a finding is in accord with GAAP it is somehow incorrect, or that

---

[4]Defendant cites *IPSCO, Inc. v. United States*, 12 CIT 384, 388, 687 F. Supp. 633, 636, n.3 (1988) for the proposition that "for purpose of making other determinations under the antidumping laws, Congress has approved use of generally accepted accounting principles."

using GAAP as one tool in the determination of what constitutes an assist is unlawful.

The Court cannot accept Plaintiff's analysis that because Customs recognizes that the inclusion of fabric waste within the definition of assist is in accordance with generally accepted accounting principles, Customs does not interpret the statute, but impermissibly rewrites it.  *Pl.'s Reply Br.* at 11. It is apparent to the Court that Customs did not use GAAP as the only  determinative factor in its analysis; as mentioned above, the inclusion of fabric waste within the definition of an assist comports with the text of the statute, its history, and the reality of shirt manufacture.  The Court agrees with Defendant that "[f]ar from being irrelevant, the fact that Customs' decision here comports with commercial reality and is in accord with GAAP demonstrates that it is correct. . . ." *Def.'s Reply Br.* at 14.

> D.      *Plaintiff's argument that any conceivable doubt should be construed in favor of the importer is unavailing because any such doubt is resolved by statutory construction.*

Salant claims that any doubt that Customs' inclusion of waste within the definition of assist is proper should be resolved in favor of the importer.  *Pl.'s Mem*. at 13.  In support of this argument, Plaintiff cites *Anhydrides & Chemicals, Inc. v. United States,* 130 F. 3d 1481, 1485 (Fed. Cir. 1997), for the proposition that "[I]f the question were one of doubt, the doubt would be resolved in favor of the importer, 'as duties are never imposed on the citizen upon vague or doubtful interpretations.'" (quoting *Hartranft v. Wiegmann,* 121 U.S. 609, 616 (1887) (internal citations omitted)).  Plaintiff is correct, and Defendant concedes, that ambiguity in the revenue statutes should be resolved in favor of the importer.

Plaintiff suggests a three-step analysis for statutory construction: first, the Court should attempt to determine Congressional intent from the plain language of the statute, second, the Court must face the question of Chevron deference, and finally, if "the court cannot resolve the ambiguity under either of the preceding steps, it should resolve the ambiguity in favor of the importer in accordance with the principle announced by Justice Story." *Pl.'s Reply Br.* at 13 (citing the rule announced in *United States v. Wigglesworth,* 28 F. Cas. 595, 596-97 (C.C.D. Mass. 1842) that ambiguity should be resolved in favor of the importer).  Even if the Court were to accept this three-step process, any apparent ambiguity as to the definition of the term assist is resolved by the Court in construing the language of the statute according to the canons of statutory construction and its legislative history.  This exercise demonstrates the correctness of Defendant's interpretation without regard to whether deference is due.  Therefore, step three is never reached.   As previously mentioned, Congressional intent is made clear by the plain language of the statute combined with its structure and history as well as the commercial reality of the industry.  There is no ambiguity, and Plaintiff's discussion of Justice Story's rule hence becomes superfluous.

### V. Conclusion

For the foregoing reasons, the Court holds that Customs properly characterized the fabric waste resulting from the CMT operation in the shirt manufacturing process as an assist. Judgment will be entered accordingly.

Dated: _____                          _____
       New York, NY                          Judith M. Barzilay
                                        Judge

ERRATUM

*Salant Corp. v. United States,* Court No. 97-06-00977, Slip Op. 00-5, dated January 14, 2000.

On p. 9, line 8 of the second full paragraph, the word "materials," should read "merchandise." On p. 9, line 9 of the same paragraph, the word "merchandise" should read "materials."

January 31, 2000