Slip Op. 01-24

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

_____

|  |  |  |
|---|---|---|
| | **:** | |
| SALANT CORPORATION, | **:** | |
| Plaintiff, | **:** | Court No. 97-06-00977 |
| v. | **:** | |
| THE UNITED STATES, | **:** | |
| Defendant. | **:** | |

_____

[Plaintiff's Rule 60(b) Motion for Relief from Judgment denied.]

Decided: March 1, 2001

*Sandler, Travis & Rosenberg, P.A. (Edward M. Joffe, Beth C. Ring, Gerson M. Joseph)* for Plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, (*John J. Mahon*), Civil Division, Department of Justice, Commercial Litigation Branch; *Beth C. Brotman*, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

**BARZILAY, JUDGE:**

### I. INTRODUCTION AND BACKGROUND

This matter is before the court pursuant to *Plaintiff's Rule 60(b) Motion for Relief From Judgment ("Pl.'s R. 60(b) Mot.").* On January 14, 2000, the court granted Defendant's motion for summary judgment, holding that the fabric waste generated during the process of manufacturing imported shirts did qualify as an "assist" within the plain meaning of the Trade Agreements Act of 1979,

19 U.S.C. §1401a(h)(1)(A) (1994) ("TAA")[1], and thus was appropriately included in the transaction

value for appraisement purposes.  24 CIT ___, ___,  86 F. Supp.2d 1301, 1308 (2000) ("Opinion").

Notice of appeal to the Court of Appeals for the Federal Circuit was given on March 3, 2000.  The

Federal Circuit granted Salant's motion to voluntarily dismiss its appeal on August 17, 2000. 2000 WL

1229047 at *1 (Fed. Cir. Aug. 17, 2000)

Salant has moved for relief from that judgment pursuant to R. 60(b) on the grounds that the

court reached its decision  (1) on the basis of "materially incomplete" evidence as to Congressional

intent and (2) without new information that has become available, which was not previously available in

"traditional" sources of legislative history. *Pl.'s R. 60(b) Mot.* at 1-2.  Plaintiff has petitioned the court

for an order vacating the judgment for the purpose of permitting Salant to conduct discovery pertaining

to an agreement allegedly entered into during the legislative process leading to the enactment of the

TAA between the Joint Industry Group ("JIG") and the United States Customs Service ("Customs"),

wherein Customs agreed that waste would not be treated as an assist.  Plaintiff also seeks to submit a

Motion for Rehearing if said discovery reveals that the court relied on incomplete information in making

---

[1]The term "assist" is defined by 19 U.S.C. § 1401a(h)(1)(A) as follows:

The term "assist" means any of the following if supplied directly or indirectly, and free of
charge or at reduced cost, by the buyer of imported merchandise for use in connection
with the production or the sale for export to the United States of the merchandise:

(i) Materials, components, parts and similar items incorporated in the
imported merchandise.
(ii) Tools, dies, molds, and similar items used in the production of the
imported merchandise.
(iii) Merchandise consumed in the production of the imported merchandise.
(iv) Engineering, development, artwork, design work, and plans and
sketches that are undertaken elsewhere than in the United States and
are necessary for the production of the imported merchandise.

its decision to designate waste material from shirt manufacturing as an assist. *Id.* at 1.

This action was initiated by Salant in June 1997 and, pursuant to USCIT R. 84, was designated a test case in June 1998.[2] Plaintiff supplies rolls of fabric to manufacturers of men's shirts to implement contracts for the "cut, make, and trim" ("CMT") of the shirts. *See Id.* at 2. Plaintiff challenged the valuation of certain men's shirts by Customs, which included the value of material supplied by Plaintiff but scrapped or wasted during the manufacturing process. Customs determined that this material qualified as an assist. *See* 19 U.S.C. § 1401a(h)(1)(A). From 1984, Customs had held that scrap or waste material from a CMT operation was not considered an assist for valuation purposes. *See* 24 CIT at ___, 86 F. Supp. 2d at 1302. However in 1995, after conducting a rule-making exercise where Customs solicited and received public comment, Customs issued a notice explaining that fabric waste generated in a CMT operation would be considered part of an assist within the terms of the statute as "merchandise consumed in the production of imported merchandise."19 U.S.C. § 1401a(h)(1)(A)(iii); 24 CIT at ___, 86 F. Supp. 2d at 1302.

### III. STANDARD OF REVIEW

Under USCIT R. 60(b), the court "may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing under Rule 59(b). . . ." As Plaintiff notes, granting such relief is within the court's discretion. *See Washington Int'l Ins. Co. v. United States*, 16 CIT 480, 483, 793 F. Supp. 1091, 1093 (1992) (citing *United States v. Atkinson*, 748 F.2d 659,

---

[2]The test case procedure allows other importers with similar factual and legal issues pending before the court to suspend such actions until the test case is resolved.

660 (Fed. Cir. 1984)).

## IV. DISCUSSION

*A. The "new information" Plaintiff alleges does not conform to the requirements of R. 60(b).*

USCIT R. 60(b) allows a court to release a party from a final judgment if there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing. . . ." It is unclear how the new information Plaintiff alleges was not uncovered well before in the history of this case.

Plaintiff seeks to conduct discovery pertaining to records and documents referenced by "longtime customs practitioner William Outman." *Pl.'s R. 60(b) Mot.* at 3-4. Mr. Outman ("Affiant") relayed in his affidavit ("*Affidavit*") that he was a member of the Steering Committee of the JIG and that he was personally involved in the drafting of the legislation that became the Trade Agreements Act of 1979 and the Tokyo Round of the General Agreement on Tariffs and Trade, including the GATT Valuation Code, which contained the first promulgation of the provision at issue regarding assists.

The timing of the Affiant's contact with Salant (i.e. March 2000), Salant's filing of this R. 60(b) motion, and the apparent failure to bring any concerns to the attention of Customs as early as 1995 when Customs first gave notice of a potential rule change are troublesome at best. *See Proposed Modification and Revocation of Customs Ruling Letters Relating to Assists*, ("*Proposed Modification*") 1995 WL 330886 (Cust. B. and Decis. May 1, 1995). According to Plaintiff, the Affiant first brought this "new" information to Salant's attention in March 2000. *Pl.'s R. 60(b) Mot.* at 2. Such "new" information should have been raised with the court immediately, rather than two months following the decision of the court.

It is also unclear why the potential existence of an agreement between Customs and the JIG regarding the scope of assists did not come to light earlier.  *See Affidavit* at 4.  In 1995, Customs gave notice of a potential rule change, and initiated a public comment period. *See Proposed Modification* at 1.  In the notice, Customs clearly explained that it proposed changing its former policy of excluding scrapped or wasted material from the scope of assists.  *Id.* at 2.   Upon completion of this public review process, Customs changed its policy and began to treat fabric wastes generated in a cut, make and trim ("CMT") operation as dutiable assists.  Customs issued Headquarters Ruling Letters ("HRLs") 543831 and 545909 to revoke earlier rulings.  In light of these events, any person or group and the public at large had at least four years' notice that Customs had reconsidered the dutiability of fabric wastes under 19 U.S.C. §1401a(h)(1)(A)(iii).  Thus, the court agrees with Defendant that the "suddenly surfacing claims of the possible existence of some 'Agreement' between Customs and the JIG and the need to vacate Slip Op. 00-05, to secure permission to conduct discovery . . . [are] untimely and facially unmeritorious." *Def.'s Resp. to Pl.'s R. 60(b) Mot*. ("*Def.'s Resp.*") at 6.

Plaintiff's statement that evidence of an agreement between Customs and the JIG was unavailable because the agreement was reached prior to the bill's introduction and that the bill was considered under "fast track" procedures is unavailing.  This assertion reflects a misunderstanding of the fast track process.  Prior to consideration of a major trade agreement under fast track procedures, the Administration and Congress engage in significant consultations.[3]  These consultations may or may not

---

[3]The statute requires that certain consultation procedures be followed prior to formal congressional consideration of any trade agreement and during negotiations of such trade agreements, to ensure that Congress fulfills its legislative duty to respond to and make recommendations regarding

be memorialized in Congressional hearings and ultimately floor debate, in which participants discuss

Congressional understandings of important provisions of a major trade agreement. In this instance, had

there been a mutual understanding of the terms of the statute as Plaintiff claims, Customs or the JIG

could have asked members of Congress to make a statement regarding the agreement, to memorialize it

as part of the legislative history. Thus, Plaintiff's assertion that such legislative history is entirely

unavailable is inaccurate.[4]

> *B. The Affidavit does not establish the existence of an agreement between*
> *Customs and the JIG.*

Plaintiff claims that the *Affidavit* (1) establishes the existence of an agreement between

Customs and the JIG that scrap would not be treated as an assist; and (2) supports Salant's argument

that the term "merchandise," rather than the term "material" was used in drafting subsection

1401a(h)(i)(A)(iii) to reflect Congressional intent that this provision was not intended to cover waste.

The *Affidavit* fails to convince the court that an agreement existed between Customs and the

JIG that waste would not be a dutiable assist. First, in ¶ 4, the *Affidavit* notes that Customs and the

JIG agreed to "narrow" the meaning of assist. *Affidavit* at 2. Additionally, in ¶ 5, the *Affidavit*

chronicles the "lobbying efforts" of the JIG in drafting the GATT Valuation Code and the TAA, which

resulted in inclusion of the word "incorporated" versus the word "used" in the legislation, so that waste

would not be construed as an assist. *Id.* at 3. In ¶ 6, the *Affidavit* states that the JIG was concerned

---

any proposed agreement, possible changes to the law, or changes in administrative practices. *See* 19
U.S.C. §§ 2902(d) [expired], 2903, 2151, 2191 (1994).

[4]The court notes that even if the agreement did exist, its probative value is questionable as to
Congressional intent. *See Kuehne & Nagel, Inc. v. United States*, 10 CIT 814, 818 (1986).

about using the word "materials" in section 1401a(h)(i)(A)(iii) because it was duplicative and "did not reflect the realities of what was being 'consumed' in actual production facilities. . . ."  *Id.* at 4. According to the *Affidavit*, the JIG successfully convinced the drafters of the TAA to incorporate the term "merchandise" instead of "materials."  The *Affidavit* closes with the Affiant's final statement:

> It is my belief that the Customs Service has maintained records and documents in its archives memorializing discussions concerning implementing the legislation and the above-described changes.  In addition, the documents and records contained in the archives of the two Congressional Trade sub-committees concerning this legislation should evidence this drafting history.

*Id.* at 7-8.

Clearly, the *Affidavit* does not address the core issue of Congressional intent regarding 19 U.S.C. § 1401a(h)(i)(A)(iii) and the meaning of the word "merchandise" in this provision as construed by the court in the prior opinion. 24 CIT at ___, 86 F. Supp. 2d at 1305.  As Defendant notes in its response, the *Affidavit* states that Customs and the JIG reached agreement on the term "incorporated" in 19 U.S.C. § 1401a(h)(1)(A)(i) to avoid having waste considered an assist, but fails to make a similar definitive statement regarding 19 U.S.C. § 1401a(h)(1)(A)(iii) and the implications of using the word "merchandise" for determining the scope of an assist.  *Def.'s Resp.* at 8.

While the *Affidavit* may show that an industry group such as the JIG exerted its influence in drafting the language of the TAA, the *Affidavit* fails to prove the existence of an "agreement" in the course of drafting the relevant statutory language.  Plaintiff relies solely on 20-year-old personal recollections of drafting history and the personal belief of one of the participants that proof of such drafting history will be found in the archives of Customs and the Congressional Trade Subcommittees.

The court notes with interest Defendant's comment that the *Affidavit* does not mention any drafting records from the JIG's files, despite the Affiant's insistence that the JIG was intimately involved in the drafting process. Furthermore, the court agrees with Defendant that even if these assertions are entirely valid, the *Affidavit* fails to prove that members of Congress were aware of these changes and their meanings. Thus, Plaintiff's claims are insufficient to prove the existence of an agreement and in the context of a Rule 60(b) motion, fail to convince the court of the need to allow Plaintiff to conduct discovery.

### V. CONCLUSION

The court finds no grounds to reopen its decision in 24 CIT ___, 86 F. Supp.2d 1301. Plaintiff's Rule 60(b) motion fails to convince the court that the *Affidavit* presents "new" evidence of an agreement between Customs and the JIG regarding the dutiability of waste. Thus, there is no new information to prompt the court to allow discovery in this case.

In accordance with the applicable standard of review and for the foregoing reasons, it is hereby

ORDERED that Plaintiff's motion for relief from judgment is denied.


Dated: _____                          _____
       New York, NY                           Judith M. Barzilay
                                              Judge